MARC J. WINTHROP – State Bar No. 63218
mwinthrop@winthropcouchot.com
KAVITA GUPTA – State Bar No. 138505
kgupta@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>CRYSTAL CATHEDRAL MINISTRIES,<br>a California nonprofit corporation,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 8:10-bk-24771-RK<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING THE DEBTOR'S PLAN EXCLUSIVITY PERIODS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT THEREOF**<br><br>[11 U.S.C. §1121]<br><br>DATE: February 8, 2011<br>TIME: 2:30 p.m.<br>PLACE: Courtroom 5D<br>411 W. Fourth Street<br>Santa Ana, CA 92701 |

**TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES-IN-INTEREST:**

Crystal Cathedral Ministries, a California nonprofit corporation, the debtor and debtor-in-possession herein ("Debtor") hereby moves ("Motion") the Court, pursuant to the provisions of Section 1121 of the United States Bankruptcy Code ("Bankruptcy Code"), for an order granting the following relief:

1. Extending, through and including May 16, 2011, the Debtor's exclusive period to file a plan of reorganization ("Plan");

2. Extending, through and including July 16, 2011, the Debtor's exclusive period to solicit acceptances to such a Plan;

3. Providing that such order is without prejudice to the Debtor's right to seek further extensions of the applicable exclusivity periods provided by Section 1121 of the Bankruptcy Code; and

4. Granting to the Debtor such other and further relief as is just and proper under the circumstances of this case.

This Motion is made on the basis of the within points and authorities, the Declaration of Gywn Myers attached hereto, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

**IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(F), YOU MUST FILE AND SERVE A WRITTEN OBJECTION AT LEAST 14 DAYS BEFORE THE HEARING.**

DATED: January 12, 2011

**WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By: */s/ Marc J. Winthrop*
Marc J. Winthrop
Kavita Gupta
General Insolvency Counsel for the Debtor and Debtor-in-Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A. The Debtor.

The Reverend Dr. Robert H. Schuller and his wife, Arvella, founded the Debtor's predecessor in 1955. At that time, it consisted of a single church, known as Garden Grove Community Church, which held its services in space rented from the Orange Drive-In Theatre. The church moved to its current location in Garden Grove, California in 1961, occupying a new sanctuary designed by architect Philip Johnson.

The Debtor produces The Hour of Power, which is shown throughout the world and is North America's longest running televised church service. The Debtor's message of "possibility thinking" is also supported through its many facets, including, *inter alia*: (1) the delivery of messages of hope each Sunday by Pastors Sheila Schuller Coleman and Dante Gebel. Dr. Schuller, who is 84, is the featured speaker once per month; (2) providing meals for the homeless every Monday; (3) conducting weekly youth groups; and (4) hosting a number of weekly self-help programs. The Debtor also operates a school and cemetery on its campus. The Debtor has approximately 250 full-time and part-time employees who support its many facets.

### B. Events Precipitating The Debtor's Financial Difficulties and Efforts to Reorganize.

Over the last few years, the Debtor's leadership has gone through several changes as the ministry has endeavored to transition from its founders to the next generation who will carry the mission of the ministry forward. Robert A. Schuller became Senior Pastor in 2006. He ultimately resigned and Dr. Sheila Schuller Coleman became the Senior Pastor in July of 2009. The period of unsettled leadership caused some in the congregation and viewing audience to leave the ministry, resulting in reduced revenue for an organization that exists primarily on donations. However, the greatest impact on the Debtor's revenues came from the severe downturn in the national economy, which has had a drastic impact on donations to the Debtor and to charitable giving in general. Donations were down approximately 24% in 2009 alone.

Since Dr. Coleman has taken over as Senior Pastor, she has focused her efforts on restoring confidence and enthusiasm in the ministry. It is too early to gauge the results of her efforts but early indicators appear to be favorable. Even though the Debtor cut expenses, the decline in donations and other revenue was so severe that the benefits of these reductions could not be recognized quickly enough and the Debtor's level of debt, both secured and unsecured, increased. Ultimately, the Debtor decided to address the growing amount of debt by convening a general meeting of creditors under the auspices of Credit Managers Association of California. The meeting was well attended and resulted in a voluntary 90-day moratorium on debt collection activities, which was almost universally observed. Due to the need to have reliable financial information on which to base an out of court repayment plan, the Unofficial Creditors Committee ("Unofficial Committee") granted the Debtor a conditional 90-day extension of the moratorium. Negotiations were well underway between the Debtor and Unofficial Committee when certain creditors sought and obtained writs of attachment and a number of other lawsuits were filed against the Debtor. Unfortunately, the negotiations between the Debtor and the Unofficial Committee stalled due to concern over the cash flow projections and financial reports. Given these circumstances, the Unofficial Committee decided to allow the moratorium to expire on October 9, 2010 and made a demand for payment. Cumulatively, these circumstances then forced the Debtor to file the present Chapter 11 proceeding on October 18, 2010 ("Petition Date") in order to obtain a breathing spell within which to address the claims of all creditors on a fair, equitable and uniform basis.

**C. <u>The Committee</u>.**

The Office of the United States Trustee ("UST") appointed the Official Committee of Unsecured Creditors ("Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code on October 27, 2010. The Committee subsequently employed the law firm of Ringstad & Sanders, LLP as its counsel.

///

**D. Post-Petition Operation/Progress Towards Reorganization.**

As of this writing, the Debtor's case was filed almost three months ago. However, due in part to the Debtor's financial condition, the seasonality of revenue,[1] and the complexity of dealing with various internal and external operational issues, this case has still not stabilized to the point that the Debtor has the financial information required to produce a feasible plan. Notwithstanding, since the Petition Date, the Debtor has continued to identify ways to improve its cash flow and to lower its costs. To that end, the Debtor is, *inter alia*, evaluating its contracts and services, negotiating with landlords to reduce administrative rent payments, and has declined to renew certain contracts that were unprofitable.

The Debtor has also engaged, on a regular basis, with the Committee, UST and to a lesser extent, its secured creditors to resolve outstanding issues, including cash collateral issues. Specifically, on November 15, 2010, the Court granted the Debtor's motion to use cash collateral on a final basis. The Debtor has also provided both the Committee and the UST with all material or relevant information that they have requested. Finally, the Debtor has complied with the obligations imposed upon it by the Bankruptcy Code, this Court's orders and the UST requirements.

This case has received extensive coverage in the press, which has primarily focused on insider compensation. At present, the Committee and the UST have collectively filed four objections to Notices of Setting/Increasing Insider Compensation (collectively, "Contested Notices"). The Debtor has agreed with the Committee and UST to the appointment of an examiner for the limited purpose of assisting in the resolution of insider compensation issues, including the Contested Notices and any future notices that may be filed.

In summary, notwithstanding the complexity of this case and the fact that the Debtor filed its petition only approximately three months ago, the Debtor has made significant progress in its case. The Debtor believes that extending the exclusivity periods from February 17, 2011 and

[1] Specifically, the results for the year-end holiday season (which is the most profitable) will not be available until such time as the exclusivity periods expire.

April 17, 2011 through and including May 16, 2011 and July 16, 2011 will enable the Debtor to resolve many of the foregoing issues and to file a confirmable plan of reorganization.

**II.**

**THIS COURT HAS AUTHORITY TO EXTEND THE EXCLUSIVE PERIODS FOR FILING AND SOLICITING ACCEPTANCES TO A PLAN**

**A. "Cause" Exists to Extend the Exclusivity Periods.**

Pursuant to Section 1121(b) of the Bankruptcy Code, a Chapter 11 debtor has the exclusive right to file a plan of reorganization during the first 120 days following the filing date of a Chapter 11 bankruptcy petition and to thereafter solicit acceptances to any plan so filed for a period of an additional 60 days.

Section 1121(b) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

11 U.S.C. § 1121(b).

No other party-in-interest may file a plan of reorganization unless: (i) a trustee has been appointed, (ii) the debtor has not filed a plan within 120 days after the date of the order of relief, or (iii) the debtor has not filed a plan that has been accepted before 180 days after the date of the order for relief by each class of claims or interests that is impaired by the plan. *See* 11 U.S.C. § 1121(c). However, Bankruptcy Code Section 1121(d) empowers the Court to reduce or extend the 120-day and 180-day periods for "cause."

Section 1121(d) of the Bankruptcy Code provides in pertinent part:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121.

The Bankruptcy Code does not define "cause" as used in Section 1121(d) so the decision of whether or not to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge. *See, e.g., Official Comm. of Unsecured Creditors v.*

*Henry Mayo Newhall Mem'l Hosp.* (*In re Henry Mayo Newhall Mem'l Hosp.*), 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006). The "cause" standard referred to in Section 1121 has been recognized as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings." *In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988).

The primary consideration for a bankruptcy court in determining whether to modify a debtor's exclusivity is whether "adjustment of exclusivity will facilitate moving the case forward towards a fair and equitable resolution." *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. at 453; *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997); In re *Adelphia Commc'ns*, 352 B.R. at 590. Further, the legislative history for Section 1121 dictates that granting an extension of exclusivity "should be based on a showing of some promise of probable success." Senate Report No. 95-989, 95th Cong., 2d Sess. 118 (1978); *see also In re Landmark Park Plaza Ltd. P'ship,* 167 B.R. 752, 756 (Bankr. D. Conn. 1994) (requiring "a showing of some promise of probable success"); *In re Montgomery Court Apartments of Ingham County, Ltd.*, 126 B.R. 537, 539 (Bankr. S.D. Ohio 1991) ("[A] debtor seeking an extension should make a showing 'of some probable success' in formulating a plan."); *In re Grossinger's Assocs.*, 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (requiring "probable success in formulating a plan of reorganization").

Other criteria that courts consider in determining if "cause" exists include: (1) the number of extensions that have been requested; (2) whether the case is complicated; (3) the time period the case has been pending, relative to its size and complexity; (4) whether the debtor is proceeding in good faith; (5) whether the debtor is paying current expenses; (6) whether the debtor has shown a reasonable prospect for filing a viable plan; (7) whether the debtor is making satisfactory progress negotiating with key creditors; (8) whether the debtor is seeking an extension of exclusivity to pressure creditors; and (9) whether the debtor is depriving the official committee of unsecured creditors of material or relevant information. *See In re Dow Corning*, 208 B.R. at 661; *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Courts

have also recognized that the diligence of management and the proper administration of the case are factors supporting an extension of the exclusivity periods. *See In re United Press Int'l*, 60 B.R. 265 (Bankr. D.D.C. 1986).

In this case, "cause" exists to grant the Debtor's request for an extension of the exclusivity periods. Such request satisfies the general principles established by the courts as guideposts in ascertaining what constitutes "cause" within the meaning of Section 1121(d). As set forth above, this is the Debtor's first request for an extension. Further, the Debtor's case was filed only three months ago and has proven to be quite complicated. The Debtor has provided the Committee with all material or relevant information that it has requested and it is not seeking this extension to pressure creditors. In fact, the Debtor has been proceeding in good faith, having worked with the Committee to resolve any outstanding issues, including cash collateral issues. Ultimately, extension of the exclusivity periods as requested herein will significantly facilitate the proposal of a confirmable Plan – a truly fair and equitable resolution to this case.

### B. The Debtor Has Properly Administered Its Case.

Courts have recognized that the diligence of management and the proper administration of the case are yet additional factors in supporting an extension of the exclusivity periods. *See, In re United Press Int'l, 60 B.R. at 265; In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).

Since the Petition Date, the Debtor has properly administered its Chapter 11 case. The Debtor has complied with the obligations imposed upon it by the Bankruptcy Code and this Court's orders. Also, the Debtor has filed the necessary schedules and reports required by the UST. The Debtor's administration of its case supports granting the relief requested herein.

## III.

## CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court enter an order granting the following relief:

1. Extending, through and including May 16, 2011, the Debtor's exclusive period to file a Plan;

2. Extending, through and including July 16, 2011, the Debtor's exclusive period to solicit acceptances to such a Plan;

3. Providing that such Order is without prejudice to the Debtor's right to seek further extensions of the applicable exclusivity periods provided by Section 1121 of the Bankruptcy Code; and

4. Granting to the Debtor such other and further relief as is just and proper under the circumstances of this case.

DATED: January 12, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: /s/ *Marc J. Winthrop*
Marc J. Winthrop
Kavita Gupta
General Insolvency Counsel for the Debtor
and Debtor-in-Possession

**DECLARATION OF GWYN MYERS**

I, Gwyn Myers, declare as follows:

1. I am the Chief Restructuring Officer of Crystal Cathedral Ministries, a California nonprofit corporation, the debtor and debtor-in-possession herein ("Debtor"),[1] and am responsible for overseeing the day-to-day operations and financial performance of the Debtor. Consequently, I have been involved in supervising all aspects of the Debtor's financial and business affairs since April 2010.

2. The facts stated herein are within my personal knowledge, and if called upon to testify to such facts I could and would testify competently thereto.

3. The Reverend Dr. Robert H. Schuller and his wife, Arvella, founded the Debtor's predecessor in 1955. At that time, it consisted of a single church, known as Garden Grove Community Church, which held its services in space rented from the Orange Drive-In Theatre. The church moved to its current location in Garden Grove, California in 1961, occupying a new sanctuary designed by architect Philip Johnson.

4. The Debtor produces The Hour of Power, which is shown throughout the world and is North America's longest running televised church service. The Debtor's message of "possibility thinking" is also supported through its many facets, including, *inter alia*: (1) the delivery of messages of hope each Sunday by Pastors Sheila Schuller Coleman and Dante Gebel. Dr. Schuller, who is 84, is the featured speaker once per month; (2) providing meals for the homeless every Monday; (3) conducting weekly youth groups; and (4) hosting a number of weekly self-help programs. The Debtor also operates a school and cemetery on its campus. The Debtor has approximately 250 full-time and part-time employees who support its many facets.

5. Over the last few years, the Debtor's leadership has gone through several changes as the ministry has endeavored to transition from its founders to the next generation who will carry the mission of the ministry forward. Robert A. Schuller became Senior Pastor in 2006. He ultimately resigned and Dr. Sheila Schuller Coleman became the Senior Pastor in July of 2009. The period of unsettled leadership caused some in the congregation and viewing audience to leave

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Motion.

the ministry, resulting in reduced revenue for an organization that exists primarily on donations. However, the greatest impact on the Debtor's revenues came from the severe downturn in the national economy, which has had a drastic impact on donations to the Debtor and to charitable giving in general. Donations were down approximately 24% in 2009 alone.

6. Since Dr. Coleman has taken over as Senior Pastor, she has focused her efforts on restoring confidence and enthusiasm in the ministry. It is too early to gauge the results of her efforts but early indicators appear to be favorable. Even though the Debtor cut expenses, the decline in donations and other revenue was so severe that the benefits of these reductions could not be recognized quickly enough and the Debtor's level of debt, both secured and unsecured, increased. Ultimately, the Debtor decided to address the growing amount of debt by convening a general meeting of creditors under the auspices of Credit Managers Association of California. The meeting was well attended and resulted in a voluntary 90-day moratorium on debt collection activities, which was almost universally observed. Due to the need to have reliable financial information on which to base an out of court repayment plan, the Unofficial Creditors Committee ("Unofficial Committee") granted the Debtor a conditional 90-day extension of the moratorium. Negotiations were well underway between the Debtor and Unofficial Committee when certain creditors sought and obtained writs of attachment and a number of other lawsuits were filed against the Debtor. Unfortunately, the negotiations between the Debtor and the Unofficial Committee stalled due to concern over the cash flow projections and financial reports. Given these circumstances, the Unofficial Committee decided to allow the moratorium to expire on October 9, 2010 and made a demand for payment. Cumulatively, these circumstances then forced the Debtor to file the present Chapter 11 proceeding on October 18, 2010 ("Petition Date") in order to obtain a breathing spell within which to address the claims of all creditors on a fair, equitable and uniform basis.

7. The Office of the United States Trustee ("UST") appointed the Official Committee of Unsecured Creditors ("Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code on October 27, 2010. The Committee subsequently employed the law firm of Ringstad & Sanders, LLP as its counsel.

8. As of this writing, the Debtor's case was filed almost three months ago. However, due in part, to the Debtor's financial condition, the seasonality of revenue,[1] and the complexity of dealing with various internal and external operational issues, this case has still not stabilized to the point that the Debtor has the financial information required to produce a feasible plan. Notwithstanding, since the Petition Date, the Debtor has continued to identify ways to improve its cash flow and to lower its costs. To that end, the Debtor is, *inter alia*, evaluating its contracts and services, negotiating with landlords to reduce administrative rent payments, and has declined to renew certain contracts that were unprofitable.

9. The Debtor has also engaged, on a regular basis, with the Committee, UST and to a lesser extent, its secured creditors to resolve outstanding issues, including cash collateral issues. Specifically, on November 15, 2010, the Court granted the Debtor's motion to use cash collateral on a final basis. The Debtor has also provided both the Committee and the UST with all material or relevant information that they have requested. Finally, the Debtor has complied with the obligations imposed upon it by the Bankruptcy Code, this Court's orders and the UST requirements.

10. This case has received extensive coverage in the press, which has primarily focused on insider compensation. At present, the Committee and the UST have collectively filed four objections to Notices of Setting/Increasing Insider Compensation (collectively, "Contested Notices"). The Debtor has agreed with the Committee and UST to the appointment of an examiner for the limited purpose of assisting in the resolution of insider compensation issues, including the Contested Notices and any future notices that may be filed.

11. In summary, notwithstanding the complexity of this case and the fact that the Debtor filed its petition only approximately three months ago, the Debtor has made significant progress in its case. This is the Debtor's first request for an extension. I believe that extending the exclusivity periods from February 17, 2011 and April 17, 2011 through and including May 16,

[1] Specifically, the results for the year-end holiday season (which is the most profitable) will not be available until such time as the exclusivity periods expire.

2011 and July 16, 2011 will enable the Debtor to resolve many of the foregoing issues and to file a confirmable plan of reorganization.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 11th day of January 2011, at Garden Grove, California.

Gwyn Myers

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING THE DEBTOR'S PLAN EXCLUSIVITY PERIODS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 12, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On January 12, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_________________, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 12, 2011 | Susan Connor | [signature] |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**NEF SERVICE**

- Frank Cadigan frank.cadigan@usdoj.gov
- Mark R Campbell mcampbell@markcampbelllaw.com
- Bernard R Given bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Marshall F Goldberg mgoldberg@glassgoldberg.com
- Kavita Gupta kgupta@winthropcouchot.com
- Edward S Kim ekim@hemar-rousso.com
- Steven B Lever sblever@leverlaw.com
- Michael S Mitchell mike@demarcomitchell.com
- John D Monte montelaw@earthlink.net
- Sue Y Park spark@callahan-law.com
- Todd C. Ringstad becky@ringstadlaw.com
- Christopher O Rivas crivas@reedsmith.com
- Nanette D Sanders becky@ringstadlaw.com
- Ramesh Singh claims@recoverycorp.com
- Edward J Tredinnick etredinnick@greeneradovsky.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Andrew F Whatnall awhatnall@daca4.com
- Marc J Winthrop mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- Arnold H Wuhrman Wuhrman@serenitylls.com

SERVICE VIA FIRST CLASS MAIL
(Unless NEF indicated)

Crystal Cathedral Ministries
Attn: Gwyn Myers, CRO
13280 Chapman Ave.
Garden Grove, CA 92840-4414

NEF
United States Trustee's Office
Attn: Frank Cadigan, Esq.
411 West Fourth St., #9041
Santa Ana, CA 92701

**CCM**
SpecialNotice, Secured
LimitNioticeOrderEntd 10/21/10
Document No. 153450

NEF
Proposed Committee Counsel
Nanette D. Sanders, Esq.
Ringstad & Sanders LLP
2030 Main Street, Suite 1200
Irvine, CA 92614

Credit Managers Association
Attn: Charles Klaus
40 East Verdugo Ave.
Burbank, CA 91502

F&M Bank of Long Beach
c/o Michael Leight, Esq.
6700 Pacific Coast Hwy, #237
Long Beach, CA 90803

F&M Bank of Long Beach
c/o Lawrence C. Meyerson, Esq.
578 Washington Blvd.. #867
Marina Del Rey, CA 90292

NEF10/21/10
Dr. Robert H. Schuller
c/o Mark R. Campbell, Esq.
Mark Campbell Law
300 S. Harbor Blvd., #700
Anaheim, CA 92805

Judy A. Quan, Esq.
Gardner & Quan Inc.
5000 Birch St., #4400
Newport Beach, CA 9660

Gipson Hoffman & Pancione
Attn: Robert E. Gipson, Esq.
1901 Avenue of the Stars #1100
Los Angeles, CA 90067-6002

NEF 10/27/10
PNCEF, LLC,
c/o Marshall F. Goldberg, Esq.
Glass & Goldberg
21700 Oxnard St., #430
Woodland Hills, CA 91367-3665

NEF 11/1/10
Temploy, Inc.
c/o Callahan & Blaine, APLC
Stephen E. Blaine, Esq.
Sue Y. Park, Esq.
3 Hutton Centre Dr., 9th Fl.
Santa Ana. CA 92707

11/10/10 CrtManual
Christina Wilcox
2480 Fairview Way
Costa Mesa, CA 92626

**NEF 11/10/10**
Edward J. Tredinnick, Esq.
Greene Radovsky Maloney Share & Hennigh LLP
Four Embarcadero Center, #400
San Francisco, CA 94111

NEF 11/11/10
Frandzel, Robins Bloom & Csato, LC
Bernard R. Given, II
6500 Wilshire Blvd., 17th Fl.
Los Angeles, CA 90048

RSN11/16/10
Morgan Stanley Bank, NA
c/o Reed Smith LLP
Christopher O. Rivas, Esq.
355 S. Grand Ave., #2900
Los Angeles, CA 90071-1514

RSN11/16/10
Morgan Stanley Bank, NA
c/o Reed Smith LLP
Mark D. Silverschotz, Esq.
599 Lexington Ave.
New York, NY 10022

NEF 12/6/2010
Steven B. Lever, Esq.

NEF 12/9/10
Edward S. Kim, Esq.
Hemar, Rousso & Heald, LLP

1/6/11 RSN
Marilyn M. Peoples-Hugghins
c/o DeMarco-Mitchell, PLLC
1255 West 15th St., #810
Plano, TX 75075

Catellus Finance I, LLC
Attn: Managing Member
201 Mission St., #340
San Francisco, CA 94105

Catellus Finance I, LLC
Attn: Asset Management
12501 E. Imperial Highway, #550
Norwalk, CA 90650