Todd C. Ringstad (State Bar No. 97345)
todd@ringstadlaw.com
Nanette D. Sanders (State Bar No. 120169)
nanette@ringstadlaw.com
RINGSTAD & SANDERS LLP
2030 Main Street, 12th Floor
Irvine, CA 92614
Telephone: 949.851.7450
Facsimile: 949.851.6926

Counsel for Committee of Creditors Holding
Unsecured Claims

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>CRYSTAL CATHEDRAL MINISTRIES,<br><br>Debtor and<br>Debtor-in-Possession. | CASE NO. 8:10-bk-24771-RK<br><br>Chapter 11 Proceeding<br><br>**MOTION OF COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS (THE "COMMITTEE") FOR ORDER TERMINATING DEBTOR'S PERIODS OF EXCLUSIVITY FOR THE FILING OF A PLAN AND OBTAINING ACCEPTANCE THEREOF, SO AS TO PERMIT THE FILING OF A PLAN BY THE COMMITTEE; DECLARATIONS OF BRIAN WEISS, JAMES L. DOTI AND NANETTE D. SANDERS IN SUPPORT THEREOF**<br><br>DATE:    July 26, 2011<br>TIME:    2:30 p.m.<br>PLACE:  Courtroom 5D |

**TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, AND TO ALL INTERESTED PARTIES:**

The Official Committee of Creditors Holding Unsecured Claims (the "Committee"), appointed in the bankruptcy case of *In re Crystal Cathedral Ministries* (the "Debtor" or "CCM"), hereby respectfully submits this Motion for Order Terminating the Debtor's Periods of

Exclusivity for the Filing of a Plan and Obtaining Acceptance Thereof, so as to Permit the Filing of a Plan by the Committee (the "Motion").

The Motion is based upon the Notice of Motion filed concurrently herewith, the attached Memorandum of Points and Authorities, the Declarations of Brian Weiss, James L. Doti, and Nanette D. Sanders filed herewith, the pleadings and files in this chapter 11 proceeding, and upon such further evidence as may be presented to the Court in support of this Motion.

The Committee submits that cause for termination of the Debtor's exclusivity period(s) exists given the Debtor's insistence on proceeding with a proposed plan premised upon a sale of the estate's real property to Greenlaw Acquisitions, LLC notwithstanding a far superior offer received for such property from Chapman University. In light of the clear benefits to the ministry presented by the Chapman University proposal, the Committee is simply baffled by the Debtor's position. If the interests of creditors are to be protected notwithstanding the Debtor's actions, the Committee must be authorized to propose a plan that will permit the alternative proposal to be presented to and vetted by creditors.

Absent termination of exclusivity to permit a Committee plan to proceed, the Committee fears a motion to appoint a trustee or perhaps to appoint an independent/provisional director to CCM's board may be necessary. The Committee submits that the efforts of CCM and the Committee are better focused on ensuring a successful and feasible reorganization of CCM's affairs than litigating such issues before the Court.

**IF YOU DO NOT OPPOSE THE MOTION AND RELIEF SOUGHT HEREBY,** you need take no further action.

**IF YOU WISH TO OPPOSE THE MOTION** pursuant to Local Bankruptcy Rule 9013-1(f), your objections must be in writing and must be filed with the Clerk of the United States Bankruptcy Court (with a duplicate copy), located at 411 West Fourth Street, Santa Ana, California, and must be served upon Debtor's counsel, Marc Winthrop, Esq., Winthrop Couchot, located at 660 Newport Center Drive, 4th Floor, Newport Beach, California 92660, counsel for the Committee, Ringstad & Sanders LLP, located at 2030 Main Street, Suite 1200, Irvine, California 92614, and the Office of the United States Trustee, located at 411 West Fourth Street, Suite 9041,

1  Santa Ana, California 92701, not less than fourteen (14) days prior to the scheduled hearing on
2  the Motion.

3  **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f)(1) further
4  provides that any opposition is to consist of "A complete written statement of all reasons in
5  opposition thereto . . . declarations and copies of all photographs and documentary evidence on
6  which the responding party intends to rely, and any responding memorandum of points and
7  authorities."

8  **PLEASE TAKE FURTHER NOTICE that Local Bankruptcy Rule 9013-1(h)**
9  **provides that your failure to timely file and serve a response as set forth above may be**
10 **deemed by the Court to be your consent to the granting of the Motion.**

11  WHEREFORE, the Committee respectfully requests that this Court enter an order:

12  1.  Terminating the Debtor's plan exclusivity period(s), so as to permit the Committee
13  to proceed with the filing of an alternate or competing reorganization plan; and,

14  2.  For such other and further relief as the Court deems just and proper.

15  Dated: July 5, 2011                          Respectfully Submitted,
                                                 RINGSTAD & SANDERS LLP
16

17
                                                 By:_____/s/_____
18                                                   Nanette D. Sanders
                                                     Counsel for Committee of Creditors Holding
19                                                   Unsecured Claims

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

**A. General Background.**

CCM and a pre-petition or out of court work out committee began efforts in April 2010 to reach a consensual arrangement for the repayment of the approximately $12,500,000 in non-insider unsecured debt asserted against the ministry. When those efforts failed, CCM filed a voluntary Chapter 11 petition on October 18, 2010.

The Committee agreed to an initial 60-day extension of the exclusivity periods, noting at that time that the parties had been in unsuccessful restructure negotiations for a full year. Thereafter, CCM filed a motion for a second extension of the exclusivity periods, seeking additional 45 – 60 day extensions of both periods (the "Second Exclusivity Motion"). The Committee opposed the requested extension, and at the June 2, 2011 hearing on the Second Exclusivity Motion, addressed with the Court the following issues, among others:

(1) CCM filed a proposed plan on or about May 30, 2011, which plan is premised upon a sale of the ministry's real property (the "Property") to Greenlaw Acquisitions, LLC ("Greenlaw"). This sale requires CCM to leaseback portions of the Property at an aggregate rate of $307,000 per month, with 3% annual rent increases. As noted by the Committee in its opposition to the Second Exclusivity Motion, CCM has not operated profitably pre or post-petition, with its solvency decreasing by $517,000 since the petition date notwithstanding the non-payment of substantial debt service. The notion that it can somehow afford an additional $307,000 in monthly lease payments, as well as monthly payments of $100,000 to unsecured creditors, is simply untenable. Given the terms and conditions of the proposed purchase by Greenlaw, a sale of the Property with its attendant leaseback provisions cannot be considered independent of plan feasibility. To do otherwise would doom this reorganization and ensure that unsecured creditors receive a significantly reduced distribution. In fact, CCM's own plan projections demonstrate that it will need to (i) hold back 13% of the gross proceeds from the proposed sale to

Greenlaw, nearly $1,600,000, (ii) sell personal property for approximately $750,000, and (iii) sublease a portion of the Family Life Building by the second year of the plan, if it is to cover anticipated operating shortfalls and support the proposed lease payments.

(2)     The Committee is aware of multiple parties who are interested in the purchase of the Property on terms more favorable to the estate than the proposed Greenlaw term sheet, most of whom have been rebuffed by CCM. The Committee requested that exclusivity be terminated so that the Committee could file a parallel plan that would provide for a sale of the Property to the highest bidder, without the artificial limitations imposed by CCM, namely the leaseback provisions and a repurchase option. The Committee's request was denied.

For the past several months, the Committee has entertained discussions with Chapman University ("CU"), among others, regarding sale options. The Debtor participated in many of these discussions which were well underway when the Debtor made public its intention to proceed with a sale to Greenlaw.

Against this backdrop, CCM, Greenlaw, Farmers & Merchants Bank ("F&M")[1] and the Committee have endeavored to negotiate overbidding procedures. From the Committee's perspective, Greenlaw seeks certain bidding protections that go far beyond those recognized as appropriate by applicable case law with the goal of overtly chilling any overbidding. This all at a time when both the Debtor and the Committee are aware of the existence of a far superior offer, namely the CU proposal, and at least two additional offers that may not be superior to the CU proposal but superior to the Greenlaw proposal.

The Committee understands that CCM will file its proposed bidding procedures motion in the next few days, with a hearing thereon scheduled for July 12, 2011 at 2:30 p.m. The Committee intends to object to the proposed bidding procedures on the grounds that (1) it is inappropriate to grant stalking horse status and bidding protections to a proposed purchaser in light of the facts of this case, including the existence of a far superior offer, and (2) certain of the proposed bidding protections will overtly chill any overbidding.

---

[1] F&M is the holder of the first and second priority deeds of trust encumbering the Property, and a general unsecured claim in the approximate amount of $3,000,000.

-5-

### B. The Greenlaw Proposal v. the CU Proposal.

Utilizing the information contained in CCM proposed plan and in the offer submitted by CU to the Debtor and the Committee, the basic terms of the two competing offers can be compared and contrasted as follows:

| Offer Provision: | Greenlaw | Chapman University |
|---|---|---|
| Purchase Price | $46,000,000 | $46,000,000 |
| Lease Back | $212,000/month NNN for "ministry buildings"[2], 3% annual increases, 15 year term<br><br>$95,000/month NNN for Family Life Building; 3% annual increases, 2 year term. Greenlaw has the right to terminate at any time following 120 days notice. | $150,000/month NNN for "ministry buildings"[3], 3% annual increases, 15 year term<br><br>$65,000/month NNN for Family Life Building[4]; no annual increases, 2 year term |
| Option to Repurchase Ministry Buildings | $30,000,000 | $23,500,000 |
| Loan to Debtor to satisfy general unsecured creditors in full on Effective Date | No. | Yes. CU to receive loan repayment terms consistent with the general unsecured creditor payment proposal advanced by CCM in its pending plan, and additional security. |
| Proposed Development of Property | High density residential. | Satellite campus for university. |
| Evidence of ability to perform provided to the Committee? | No. | Yes. |

---

[2] Ministry buildings to include Crystal Cathedral Church, Tower of Hope, Arboretum, Family Lounge, Art Gallery, Spire and Prayer Chapel, the Welcoming Center and Memorial Gardens.
[3] Ministry buildings to include the Crystal Cathedral Church, Tower of Hope, Arboretum, Family Lounge, Art Gallery, Spire and Prayer Chapel and Memorial Gardens (note, both definitions are the same with the exception of the Welcoming Center).
[4] CCM to lease back the basement and floors 1 and 2 of the Family Life Building. These portions of the building are utilized by CCM to operate a school. The balance of the building is vacant.

As the above demonstrates, the CU proposal will help address the Debtor's operating deficiencies by providing for substantially reduced lease obligations for all buildings necessary to the continued operation of the Debtor's ministry, provide a more affordable repurchase option, and provide the mechanism for repayment of creditor claims in full on the proposed plan effective date or as claims are allowed. In fact, the CU proposal provides the Debtor with estimated annual cash savings as follows:

|  | Yr 1 | Yr 2 |
|---|---|---|
| Rent Savings | | |
|   Family Life Center | $ 360,000 | $ 394,200 |
|   Campus | 744,000 | 766,320 |
|   NNN Savings per Debtor's Financial Advisor's Analysis | 642,000 | 642,000 |
| | 1,746,000 | 1,802,520 |
| Cumulative | 1,746,000 | 3,548,520 |

## II.

## THE COURT MAY TERMINATE EXCLUSIVITY TO ALLOW A PARTY OTHER THAN THE DEBTOR TO FILE A PLAN

Bankruptcy Code § 1121(b) grants the debtor the exclusive right to file a plan of reorganization during the first 120 days following the commencement of debtor's bankruptcy case. If debtor does propound a plan during this initial 120-day time period, Bankruptcy Code § 1121(c) grants the debtor the exclusive right to solicit acceptance of its plan during the first 180 days following the commencement of the debtor's bankruptcy case. However, pursuant to Bankruptcy Code § 1121(d)(1), after notice and a hearing, the Bankruptcy Court may reduce or increase the 120-day and 180-day periods for cause. By this Motion, the Committee requests that the Court enter an order granting a reduction or termination of the current exclusivity period or periods, such that the Committee will be authorized by the Court to file a proposed plan notwithstanding the non-expiration of the Debtor's exclusivity periods.

Bankruptcy Code § 1121(b), (c) and (d) provide, in relevant part, that:

    (b) Except as otherwise provided in this section, only the debtor may file a plan until 120 days after the date of the order for relief under this chapter.

    (c) Any party in interest, including…a creditor, [or] an equity security

> holder…may file a plan if and only if-
>
> \*\*\*
>
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
>
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class or claims or interests that is impaired under the plan
>
> (d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

Courts often terminate a debtor's exclusivity periods in order to democratize the reorganization process, and such termination of exclusivity is particularly common where an acrimonious relationship between the debtor's principals. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Maine 1982)(Holding that Bankruptcy Code § 1121(c) and (d) are "intended to provide the court with flexibility in individual cases, and to democratize the reorganization process," and shortening debtor's exclusivity periods where the principal parties acrimonious relationship was an obstacle to a successful reorganization.) [Internal citation omitted]. *In re Texas Extrusion Corp.*, 68 B.R. 712 (Dist. N.D. TX 1986)(Affirming reduction of debtor's exclusivity periods where major obstacle to successful reorganization was acrimonious relationship of principal parties.).

CCM filed its proposed plan on May 30, 2011, within the initial extended exclusivity period. Thereafter, the Court extended the second period to July 31, 2011. As such, the Committee believes it requires only a termination of the second period but refers to both to ensure that the necessary relief is sought.

Good cause exists for the Court to order the limited termination of the Debtor's periods of Plan exclusivity in the instant case, so as to permit the Committee to file an alternate or

- 8 -

competing plan to that proposed by the Debtor. In particular, the Debtor has demonstrated its inability to exercise sound business judgment by electing to proceed with an inferior proposal for the sale of its primary assets, rebuffing superior offers for reasons that have not been well articulated. The Debtor should be rejoicing in light of the CU offer but instead appears to be clinging irrationally to the Greenlaw offer, an offer that renders the Debtor's plan infeasible and is not in the best interests of the estate or its creditors.

With the second exclusivity period extended through July 31, 2011, the Debtor is essentially using exclusivity to hold the creditors hostage and further an incomprehensible agenda to the detriment of the ministry and the creditors. All at a time when the Debtor continues to operate at levels insufficient to support a feasible reorganization plan given the more than $50,000,000 in debt the ministry is carrying. The Debtor has simply failed to demonstrate any financial progress toward a successful reorganization. Based upon its current 13-week cash flow projections, the Debtor expects to burn through $1.1 million of cash from April 15, 2011 through July 15, 2011 and its solvency has decreased by $517,000 since the bankruptcy filing. The passage of time has and will continue to materially impact the ministry's solvency. The Debtor's complete lack of progress over the course of the last year in restoring donor support and cash flow to a level that can service its secured and unsecured debt should, alone, be sufficient to conclude that termination of exclusivity is unwarranted.

Granting the termination of the exclusivity periods will democratize the reorganization process by allowing the Committee to present to the Court and creditors the CU offer in the form of a competing plan.

///
///
///
///
///
///
///

1  For the foregoing reasons, the Motion should be granted and the Committee allowed an opportunity to present its plan to the creditors and this Court, with the creditors and the Court offered the opportunity to consider the respective visions of the Committee and the Debtor.

DATED: July 5, 2011

RINGSTAD & SANDERS LLP

By: _____/s/_____
Nanette D. Sanders
General Insolvency Counsel to the Committee of Creditors Holding Unsecured Claims

# DECLARATION OF BRIAN WEISS

I, Brian Weiss, declare and state as follows:

1. The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify thereto. I am the Managing Director of BSW & Associates (the "Firm"), the Financial Consultant to the Official Committee of General Unsecured Creditors (the "Committee") appointed in the matter of *In re Crystal Cathedral Ministries, Inc.* ("CCM" and/or the "Debtor").

2. I make this declaration in support of the Motion of the Committee for Order Terminating the Debtor's Periods of Exclusivity for the Filing of a Plan and Obtaining Acceptance Thereof, so as to Permit the Filing of a Plan by the Committee (the "Motion").

3. BSW & Associates has been employed by the Committee as the Committee's Financial Advisor. In this capacity, I have reviewed considerable financial and operational information provided at my request by CCM and its financial advisor, FTI Consulting. Based upon my review and analysis of all information provided to date, it is apparent that CCM's solvency has decreased post-petition by $517,000, at a time when its solvency has not been burdened by normalized debt service on its secured debt, or alternatively, rent payments on its real estate. If either of these had been paid, CCM would have burned through $3,841,000 of cash in the eight and one half months it has been in bankruptcy.

4. My analysis also reveals that since 2006, Support/Revenue has steadily decreased each year. From 2006 to 2010, Support/Revenue has decreased by $41.2 million or 59%. Further, from October 2010 through May 2011, the Debtor's Support/Revenue has decreased by $5.7 million or 24% from the comparable period from October 2009 through May 2010. The financial projections filed by the Debtor in support of its proposed plan assume Revenue/Support from November 2011 through May 2012 will only decrease by $423,000 or 3% from the comparable period beginning November 2010 through May 2011[5] although the actual declines currently being

---

[5] The projections are being compared against this historical time period due to the availability of historical financial information per the Monthly Operating Reports.

- 11 -

experienced are significantly greater. The Debtor projects its operating expenses[6] will decrease by $140,000 or 1% during this same period. The net impact of the projected revenue decreases partially offset by the projected decrease in operating expenses negatively impact operating cash flows resulting in a $284,000 or 14% decrease in operating cash flow. This reduction contemplates a reduction in headcount in January 2012.

5. Utilizing the information contained in CCM proposed plan and in the offer submitted by Chapman University to the Debtor and the Committee, the basic terms of the Greenlaw and Chapman University competing offers can be compared and contrasted as follows:

| Offer Provision: | Greenlaw | Chapman University |
|---|---|---|
| Purchase Price | $46,000,000 | $46,000,000 |
| Lease Back | $212,000/month NNN for "ministry buildings"[7], 3% annual increases, 15 year term<br><br>$95,000/month NNN for Family Life Building; 3% annual increases, 24 month term. Greenlaw has the right to terminate the lease at any time following 120 days notice. | $150,000/month NNN for "ministry buildings"[8], 3% annual increases, 15 year term<br><br>$65,000/month NNN for Family Life Building[9]; no annual increases, 2 year term |
| Option to Repurchase Ministry Buildings | $30,000,000 | $23,500,000 |
| Loan to Debtor to satisfy general unsecured creditors in full on Effective Date | No. | Yes. CU to receive loan repayment terms consistent with the general unsecured creditor payment proposal advanced by CCM in its |

---

[6] The operating expenses exclude reorganization costs, depreciation and interest. For the Actual amounts, the proposed rent per the Greenlaw letter of intent has been included for comparability purposes.
[7] Ministry buildings to include Crystal Cathedral Church, Tower of Hope, Arboretum, Family Lounge, Art Gallery, Spire and Prayer Chapel, the Welcoming Center and Memorial Gardens.
[8] Ministry buildings to include the Crystal Cathedral Church, Tower of Hope, Arboretum, Family Lounge, Art Gallery, Spire and Prayer Chapel and Memorial Gardens (note, both definitions are the same with the exception of the Welcoming Center).
[9] CCM to lease back the basement and floors 1 and 2 of the Family Life Building. These portions of the building are utilized by CCM to operate a school. The balance of the building is vacant.

| | | |
|---|---|---|
| | | pending plan. |
| Proposed Development of Property | High density residential. | Satellite campus for university. |
| Evidence of ability to perform provided to the Committee? | No. | Yes. |

As the above demonstrates, the CU proposal will help address the Debtor's operating deficiencies by providing for substantially reduced lease obligations for all buildings necessary to the continued operation of the Debtor's ministry, provide a more affordable repurchase option, and provide the mechanism for repayment of creditor claims in full on the proposed plan effective date or as claims are allowed. In fact, the CU proposal provides the Debtor with estimated annual cash savings as follows:

| | Yr 1 | Yr 2 |
|---|---|---|
| Rent Savings | | |
|    Family Life Center | $ 360,000 | $ 394,200 |
|    Campus | 744,000 | 766,320 |
| NNN Savings per Debtor's Financial Advisor's Analysis | 642,000 | 642,000 |
| | 1,746,000 | 1,802,520 |
| Cumulative | 1,746,000 | 3,548,520 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 1, 2011, at Newport Beach, California.

_____
Brian Weiss

Ringstad & Sanders LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

# DECLARATION OF JAMES L. DOTI

I, James L. Doti, declare:

1. I am an individual over the age of 18 years and make this based upon facts within my personal knowledge. I am the President of Chapman University, a position that I have held since 1991.

2. Chapman University is one of California's oldest and most respected private institutions, celebrating its 150th anniversary this year. Nearly 7,000 students are currently enrolled in nationally ranked undergraduate and graduate programs within the University's seven colleges. The University is currently ranked among the top ten master's level universities in the West by *U.S. News and World Report*.

3. After lengthy negotiations, the University has submitted a written offer to the Debtor and the Committee for the purchase of the Property and the leaseback of a portion of the Property to the Debtor. The Board of Trustees has authorized University staff and professionals to take appropriate steps to commence the due diligence process, and evidence of the University's ability to consummate the proposed transaction has been provided to counsel for the Debtor and the Committee. The basic terms of the proposed transaction are described in summary fashion in the Motion.

4. The Property, located in the City of Garden Grove, is approximately ten minutes away from the main campus of the University that is located in the City of Orange. The University views its acquisition of the Property as an important aspect of its long-term plans for an additional local venue for the pursuit of higher education. The University believes its proposed use of a portion of the Property as an educational facility is more compatible with the Debtor's continued use of the premises than a residential or apartment housing development, and

///
///
///
///
///

1 looks forward to an ongoing mutually beneficial relationship with CCM as a result of the
2 consummation of the proposed transaction.
3     I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st
4 day of July, 2011, at Orange, California.

_____
James L. Doti

# DECLARATION OF NANETTE D. SANDERS

I, Nanette D. Sanders, declare:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am a partner with the firm of Ringstad & Sanders LLP, counsel for the Official Committee of Unsecured Creditors (the "Committee") in the matter of *In re Crystal Cathedral Ministries, Inc.* ("CCM" and/or the "Debtor"). I make this declaration on facts within my personal knowledge and if called upon to do so, could and would competently testify hereto.

2. Pre-petition, in or about April, 2010, CCM commenced out of court restructure efforts with its general unsecured creditors. An informational meeting was held on April 9, 2010, at which time 9 creditors[10] volunteered to sit on an informal creditors committee (the "Pre Petition Committee") and work with CCM in an effort to formulate a repayment plan. The Pre Petition Committee engaged the Firm, at the expense of CCM, to act as its legal advisor in connection with the informal restructure efforts.

3. During the period of April 9, 2010 through October 9, 2010, the Pre Petition Committee agreed to a moratorium and asked that all other trade creditors abide by the voluntary moratorium so as to give the parties necessary time to evaluate CCM's financial situation, stabilize operations, and formulate a repayment play for distribution to and (hopefully) acceptance by trade creditors.

4. Prior to the expiration of the voluntary moratorium, several creditors initiated litigation against CCM in the Orange County Superior Court, and several sought or obtained pre judgment writs of attachment. When it became apparent that certain creditors would not participate in the voluntary restructure process, CCM filed its voluntary petition on October 18, 2010.

5. The Committee consists of 5 members, 4 of which were members of the Pre-Petition Committee.

6. Over the course of the past two months, I have received multiple telephone calls and many meetings and conference calls with prospective purchasers of the Debtor's Garden

---

[10] One creditor subsequently resigned and the Pre Petition Committee continued with 8 members.

1  Grove campus. Formal purchase proposals have been tendered to CCM and the Committee. Of
2  those received and reviewed to date, the Committee strongly believes that the offer from
3  Chapman University ("CU") is a far superior offer to that presented by Greenlaw and upon which
4  CCM has based its pending plan proposal.

5      7.    The Committee is prepared to proceed with an alternate or competing plan based
6  upon the CU proposal and to that end has prepared the a proposed plan, a copy of which is
7  attached hereto as Exhibit "A" and incorporated by this reference.

8  I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th
9  day of July, 2011, at Irvine, California.

                                                  /s/
                                  Nanette D. Sanders

Ringstad & Sanders L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450