1  ALAN H. MARTIN, Cal. Bar No. 132301
   amartin@sheppardmullin.com
2  MICHAEL A. WALLIN, Cal. Bar No. 240344
   mwallin@sheppardmullin.com
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   650 Town Center Drive, 4th Floor
4  Costa Mesa, California  92626-1993
   Telephone:    714-513-5100
5  Facsimile:    714-513-5130

6  Attorneys for Party-in-Interest
   The Roman Catholic Bishop of Orange
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                     Santa Ana Division

11 | In re                          | Case No. 8:10-bk-24771-RK
12 | CRYSTAL CATHEDRAL MINISTRIES,   | Chapter 11
   | a California nonprofit corporation, |
13 |                                 |
   |          Debtor and             | **OPPOSITION OF THE ROMAN
14 |          Debtor-in-Possession.  | CATHOLIC BISHOP OF ORANGE, A
   |                                 | CALIFORNIA CORPORATION
15 |                                 | SOLE, TO DEBTOR'S MOTION FOR
   |                                 | ORDER APPROVING OVERBID
16 |                                 | PROCEDURES IN CONNECTION
   |                                 | WITH THE PROPOSED SALES
17 |                                 | CONTEMPLATED IN THE
   |                                 | DEBTOR'S CHAPTER 11 PLAN OF
18 |                                 | REORGANIZATION**
19 |                                 |
20 |                                 | Hearing:
21 |                                 | Date:  July 12, 2011
   |                                 | Time:  2:30 p.m.
22 |                                 | Place:  Courtroom 5D
23 |                                 |         411 West Fourth Street
   |                                 |         Santa Ana, CA 92701
24
25
26
27
28

W02-WEST:3MAW1\403706331.2

1  **TO THE HONORABLE ROBERT KWAN, UNITED STATES**

2  **BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, THE**

3  **DEBTOR, AND TO ALL INTERESTED PARTIES:**

4

5       The Roman Catholic Bishop of Orange, a California Corporation Sole, party-

6  in-interest herein, hereby submits the following opposition to debtor Crystal Cathedral

7  Ministries' ("Debtor") Motion for Order Approving Overbid Procedures in Connection

8  with the Proposed Sales Contemplated in the Debtor's Chapter 11 Plan of Reorganization

9  (the "Motion").

10  **I.      INTRODUCTION**

11       *The Roman Catholic Bishop of Orange, a California Corporation Sole,*

12  *("The RCBO") through its Incumbent, The Most Reverend Tod D. Brown Bishop of*

13  *Orange, hereby states to this Court its serious interest in purchasing the Crystal Cathedral*

14  *Campus (the "Campus") and has expressed such specific interest to both Debtor and the*

15  *Official Committee of Creditors Holding Unsecured Claims (the "Committee").*  Bishop

16  Brown has monitored this case out of concern for the landmark Crystal Cathedral, an

17  important Christian Ministry and a cherished worship site in our region.  The RCBO and

18  Bishop Brown recognize and appreciate what the Crystal Cathedral has represented to so

19  many for so long.  Given the direction this case has taken, including the proposed "stalking

20  horse" offer, The RCBO is concerned that the Crystal Cathedral may not remain a

21  functioning part of the liturgical landscape in our region.  The RCBO's interest in

22  purchasing the Campus stems, in part, from its desire that the Crystal Cathedral remain a

23  place of worship.

24       The RCBO's interest also stems from the Roman Catholic Diocese of

25  Orange's significant need for a larger cathedral facility.  The Diocese of Orange is the 11th

26  largest diocese in the nation, with 1.2 million Catholics in Orange County.  However, the

27  Diocese of Orange's current cathedral facility ("Holy Family" in Orange) seats only 900.

28  The current facility is simply inadequate, which has caused The RCBO to explore

-1-

1  alternatives for a larger facility.  This sincere interest in purchasing the Campus stems

2  from a deep hope to keep the Crystal Cathedral as a place of worship and, at the same time,

3  meet the needs of the Diocese of Orange.

4          Through its counsel, The RCBO has been duly briefed regarding the

5  proposed sale procedures (the "Procedures") outlined in the Motion.  The RCBO opposes

6  the Motion because the Procedures are flawed in several key respects.  The RCBO,

7  through counsel, has been in communication with the Committee regarding the Procedures

8  and The RCBO's interest in purchasing the Campus.  The RCBO understands that the

9  Committee shares many of the Diocese's serious concerns regarding the Procedures and

10  Motion.

11          In addition to the arguments contained in the Committee's opposition, The

12  RCBO opposes the Motion on the following grounds:

13  **A.      <u>The RCBO Has Standing To File This Opposition</u>**

14          As a preliminary matter, The RCBO has standing to file this opposition.  11

15  U.S.C. § 1109(b) provides: "A party in interest, including the debtor, the trustee, a

16  creditors' committee, an equity security holders' committee, a creditor, an equity security

17  holder, or any indenture trustee, may raise and may appear and be heard on any issue in a

18  case under this chapter."  The RCBO, as a party interested in purchasing the Campus, is a

19  "party in interest" and therefore has standing to oppose the Procedures.  *See In re Jon J.*

20  *Peterson, Inc.*, 411 B.R. 131 (Bankr. W.D.N.Y. 2009) (holding that potential buyers'

21  objections can be considered to facilitate the court's mandatory review of sale procedures).

22  **B.      <u>The Procedures Grant Debtor Too Much Discretion</u>**

23          To the potential detriment of the estate and third party purchasers, the

24  Procedures grant Debtor far too wide of discretion in at least two key respects.  First, <u>the</u>

25  <u>Procedures allow Debtor to reject offers that may be advantageous to the estate</u>.  The

26  Procedures provide:

27

28

1

2

3

> "The Debtor, subject to consultation with the Committee and the right of any party to object and seek Bankruptcy Court determination of same, shall determine in its business judgment whether any Offer constitutes a Qualified Offer."  (Motion, 14:20-22.)

4

5  Although Debtor will consult with the Committee, the Procedures permit Debtor to

6  *unilaterally* reject offers.  This is problematic because, per the Procedures, no auction will

7  take place unless a Qualified Offer has been received.  Moreover, Debtor can prevent

8  legitimate potential purchasers from participating in the auction.  Debtor may conceivably

9  reject legitimate competing offers simply because they materially differ from the offer

10  submitted by Greenlaw Partners, LLC (the "Greenlaw Offer"), even if such competing

11  offers benefit the estate.  For instance, an offer may be submitted at a higher purchase price

12  than the Greenlaw Offer, but which does not include the lease-back and repurchase

13  provisions contained in the Greenlaw Offer.  Creditors may very well prefer this higher

14  offer, but the Procedures allow Debtor to unilaterally reject it, thereby reducing

15  competition and lowering the eventual sale price.

16         Equally important, <u>the Procedures grant Debtor too much discretion in

17  determining who *wins* the auction</u>.  The Procedures provide that, at the auction:

18

19

> "the bidding will continue until there are no higher and better bids, with the right to purchase the Crystal Cathedral Campus being awarded to the <u>highest and best bid</u> at the conclusion of the auction . . .."  (Motion, 15:19-21.) (emphasis added)

20

21  But how will the "highest and best bid" be determined?  The Procedures seem to give

22  Debtor authority to determine which bid is the "highest and best," particularly given that

23  the auction will take place at Debtor's counsel's office rather than before the Court.  In

24  fact, the Procedures provide:

25

26

27

> "the Debtor shall have no obligation to accept any Qualified Bid and may reject an otherwise Qualified Bid if it is not on substantially the same terms and conditions as the [Greenlaw Offer] (other than monetary terms) or otherwise …"  (Motion, 14-15:26-1.)

28

1  Ordinarily, determining the "highest and best" offer is not difficult.  But here, where the

2  structure of offers may differ substantially, selecting the "highest and best" offer is

3  complicated and requires creditor and Court involvement.  Debtor should not be given the

4  largely unilateral authority to select the winning bidder.  Moreover, Debtor should not be

5  permitted to unilaterally reject a superior offer simply because, for instance, the superior

6  offer's lease-back or repurchase provisions are not *identical* to the Greenlaw Offer.  The

7  terms of the winning bid will greatly impact creditor recoveries as to both amount and

8  timing of payment.

9        C.    **The Procedures Grant Greenlaw An Improper "Matching Right"**

10             The Procedures inappropriately grant Greenlaw the right to win the auction

11 simply by matching the highest and best bid.  The Procedures state:

12             "… provided that the Campus Purchaser shall be entitled to the
                right to match the highest and best bid of any third person, with
13             any tie being in favor of the Campus Purchaser."  (Motion,
                15:21-23.)
14

15 Such "matching right" favors Greenlaw over other potential purchasers, without

16 justification.  More importantly, such a provision will serve to chill bidding and will not

17 maximize the sale price of the Campus.

18       D.    **Debtor Has Not Yet Submitted Greenlaw's Purchase And Sale**

19 **Agreement**

20             As of the afternoon of July 9 (two court days prior to the hearing), the

21 proposed Purchase and Sale Agreement (the "PSA") has not been made available to parties

22 in interest.  Interested parties cannot adequately evaluate either the Procedures or the

23 Greenlaw Offer without sufficient time prior to a hearing to assess the PSA.

24       E.    **The Proposed Break-Up Fee Should Not Be Approved**

25             The Procedures provide that Greenlaw with receive a "Break-Up Fee" of 2%

26 of the purchase price ($920,000) if the Campus is sold to a party other than Greenlaw, or a

27 Break-Up Fee of 1% - 1.5% ($460,000 - $690,000) in the event of a "Debtor Withdrawal"

28 (i.e., if Debtor elects not to sell the Campus but rather maintain ownership itself).  (Motion,

10-11).  The Break-Up Fee should not be approved for, among others, the following reasons:

**1.      The Break-Up Fee is not in the best interests of the estate.**

Courts often approve or deny a breakup fee based on a determination of whether the fee is in the "best interests" of the bankruptcy estate in light of the following factors:

• whether the bid is higher than it would have been had the breakup fee not been granted;

• whether the breakup fee provided net value to the estate;

• whether a breakup fee is necessary to start the bidding process; and

• whether the amount of the fee is small relative to the overall benefit to the estate.  *See In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994). Here, these factors weigh in favor of rejecting the proposed Break-Up Fee.  First, the Break-Up Fee is not needed to start the bidding process.  At least two other highly qualified bidders are interested in purchasing the Campus (Chapman University and The RCBO for the benefit of the Diocese of Orange).  Moreover, Debtor has acknowledged that several additional parties have also expressed interest.  The Break-Up Fee is not necessary to start the bidding process and therefore should not be approved.  *See In re President Casinos, Inc.*, 314 B.R. 786 (Bankr. E.D. Mo. 2004) (refusing to approve in full a requested break-up fee, noting "The record has indicated that this process was not a situation where only one entity had expressed an interest in acquiring some or all of the Debtors' assets.").

1  Second, <u>the Break-Up Fee will not provide net value to the estate</u>.  Every

2  dollar paid to Greenlaw as a break-up fee is a dollar lost to unsecured creditors.  In certain

3  cases unsecured creditors may be willing to expend funds on a break-up fee, where a

4  break-up fee is needed to induce a stalking horse offer.  But that is not the case here.  Here,

5  multiple offers have already been made, and additional offers will continue to be made,

6  regardless of whether the sale procedures include any break-up fee.  The proposed Break-

7  Up Fee will not cause the final sale price to increase.  Therefore, the Break-Up Fee does

8  not provide net value to the estate and should not be approved.

9  Third, <u>there is no evidence that the Break-Up Fee increased the amount of</u>

10  <u>the Greenlaw Offer</u>.  In other words, Debtor has not established that Greenlaw's "bid is

11  higher than it would have been had the breakup fee not been [requested]."  In fact,

12  Chapman University has apparently made an offer superior to the Greenlaw Offer, without

13  the inclusion of any break-up fee.  This indicates that the Greenlaw Offer was not

14  increased by the proposed Break-Up Fee and, therefore, the Break-Up Fee does not benefit

15  the estate.

16  **2.    Greenlaw should not receive any break-up fee if the Campus is**

17  **not sold.**

18  In the Motion, Debtor states: "Of significant import is the fact that the break-

19  up fee will be paid only upon the **closing of the sale to the successful bidder** and shall be

20  paid only from the deposit given by the successful bidder."  (Motion, 21:14-16) (emphasis

21  in original).  But this statement <u>directly contradicts</u> the Procedures.  The Procedures

22  provide:

23  "… in the event of a Debtor Withdrawal, the Break-up Fee
   amount shall be deemed to be (i) one percent (1%) of the
24  purchase price if the Debtor Withdrawal (as defined below)
   occurs within thirty (30) days of the date that the PSA is
25  executed and (ii) one and one-half percent (1.5%) in the event
   of a Debtor Withdrawal occurs at any time after such thirty
26  (30) day period.  The term "Debtor Withdrawal" means any
   default by Debtor under the PSA resulting from the Debtor, at
27  any time prior to conclusion of the Sale Confirmation Hearing
   <u>electing in good faith to no longer sell the Crystal Cathedral</u>
28  <u>Campus with the intent to maintain ownership and control</u>
   <u>thereof</u> for the foreseeable future and, as a result thereof,

breaching or otherwise terminating the PSA." (Motion, 11:7-17) (emphasis added).

Contrary to the above-quoted statement that the Break-Up Fee will only be paid upon the sale of the Campus, the Procedures require Debtor to pay Greenlaw a break-up fee regardless of whether the sale closes. This is inappropriate and does not benefit the estate. Again, such a provision *may* be appropriate where necessary to induce a stalking horse offer, but such inducement is not needed here given the high level of interest.

### 3.    Debtor has not complied with LBR 6004-1.

Local Rule 6004-1(b)(6)(A) provides that if a break-up fee is requested in a sale procedure motion, such request must be supported by evidence establishing that the proposed break-up fee is likely to enhance the ultimate sale price. Here, the only evidence submitted in support of the Motion is the Declaration of Gwyn Myers (the "Myers Declaration"). The Myers Declaration includes no evidence whatsoever as to why the Break-Up Fee will enhance the ultimate sale price of the Campus, other than the following statement:

> "The Debtor and Campus Purchaser acknowledge and agree that Campus Purchaser has provided a substantial and actual benefit to the estate by agreeing to be the stalking horse and that the Break-up Fee is necessary to preserve and otherwise maximize the value of the Crystal Cathedral Campus, all to the substantial benefit of the estate." (Myers Declaration, ¶ 20(c)(ii)).

Such a conclusory statement does not satisfy the requirement of Local Rule 6004-1(b)(6)(A). It does not constitute evidence that the Break-Up Fee will enhance the ultimate sale price of the Campus. Funds of the estate should not be used to pay the Break-Up Fee unless and until Debtor establishes, with evidence, that the Break-Up Fee is likely to increase the ultimate sale price of the Campus. Debtor has failed to present any such evidence.

W02-WEST:3MAW1\403706331.2

-7-

**II.    CONCLUSION**

          For the foregoing reasons, The RCBO respectfully requests that the Court deny the Motion and refuse to approve the Procedures.


Dated:  July 11, 2011

                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                              By          */s/ Michael A. Wallin*
                                          ALAN H. MARTIN
                                          MICHAEL A. WALLIN
                                          Attorneys for Party-in-Interest
                                          The Roman Catholic Bishop of Orange, a
                                          California Corporation Sole

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Sheppard, Mullin, Richter & Hampton LLP, 650 Town Center Drive, 4th Floor, Costa Mesa, California 92626-1993

A true and correct copy of the foregoing document described as **OPPOSITION OF THE ROMAN CATHOLIC BISHOP OF ORANGE, A CALIFORNIA CORPORATION SOLE, TO DEBTOR'S MOTION FOR ORDER APPROVING OVERBID PROCEDURES IN CONNECTION WITH THE PROPOSED SALES CONTEMPLATED IN THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ July 11, 2011 _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
See attached Service List.

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ July 11, 2011 _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
See attached Service List via U.S. Mail.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.
Via Personal Delivery (Bin Outside Room 5097):  Honorable Robert Kwan, United States Bankruptcy Court, Ronald Reagan Federal Building, 411 W. Fourth Street, Santa Ana, California 92701-4593.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 11, 2011 | Margaret N. Manns | /s/ Margaret N. Manns |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING:**

- Jeffrey W Broker    jbroker@brokerlaw.biz
- Frank Cadigan    frank.cadigan@usdoj.gov
- Mark R Campbell    mcampbell@markcampbelllaw.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Patricia A Cirucci    patricia.cirucci@sce.com
- Jeff Cohen    JC@SouthpawAsset.com
- Don Fisher    dfisher@ptwww.com
- Bernard R Given    bgiven@frandzel.com,
  efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Marshall F Goldberg    mgoldberg@glassgoldberg.com
- Carl Grumer    cgrumer@manatt.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Edward S Kim    ekim@hemar-rousso.com
- Steven B Lever    sblever@leverlaw.com
- Craig A Loren    aloren@debtacquisitiongroup.com,
  bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
- Lawrence C Meyerson    lcmlaw@earthlink.net
- Michael S Mitchell    mike@demarcomitchell.com
- John D Monte    johnmontelaw@gmail.com
- Vahak Papasian    vahak@vaplaw.com, test@ecf.inforuptcy.com
- Sue Y Park    sparkcallahan@gmail.com
- Thomas J Polis    tom@polis-law.com
- Richard J Reynolds    glatimer@trlawyers.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Christopher O Rivas    crivas@reedsmith.com
- Nanette D Sanders    becky@ringstadlaw.com
- Ramesh Singh    claims@recoverycorp.com
- Edward J Tredinnick    etredinnick@greeneradovsky.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Andrew F Whatnall    awhatnall@daca4.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- Arnold H Wuhrman    Wuhrman@serenitylls.com
- Pamela Jan Zylstra    zylstralaw@gmail.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **9013-3.1.PROOF.SERVICE**

**TO BE SERVED VIA U.S. MAIL:**

**Christopher R Barclay**
**LeCG LLC**
**600 Anton Blvd., Suite 1350**
**Costa Mesa, CA  92626**

**Elaine Cathell**
**20909 Olympic Pl, Apt. 310**
**Arlington, WA  98223**

**Fair Harbor Capital, LLC**
**Ansonia Finance Station**
**PO Box 237037**
**New York, NY  10023**

**Liquidity Solutions, Inc.**
**One University Plaza. Suite 312**
**Hackensack, NJ  07601**

**Pioneer Funding Group, LLC**
**Greeley Square Station**
**PO Box 20188**
**39 W. 31st Street**
**New York, NY 10001**

**TR Capital Management, LLC**
**336 Atlantic Avenue, Suite 302**
**East Rockaway, NY 11518**

**Tannor Partners Credit Fund II, LP**
**200 Business Park Drive, Suite 200**
**Armonk, NY 10504**

**Christina Wilcox**
**2480 Fairview Way**
**Costa Mesa, CA 92626**

**Arnold H. Wuhrman**
**Serenity Legal Services**
**41680 Ivy Street, Suite D**
**Murrieta, CA  92562**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**9013-3.1.PROOF.SERVICE**