1    Todd C. Ringstad (State Bar No. 97345)
      todd@ringstadlaw.com
2    Nanette D. Sanders (State Bar No. 120169)
      nanette@ringstadlaw.com
3    RINGSTAD & SANDERS LLP
      2030 Main Street, 12th Floor
4    Irvine, CA  92614
      Telephone: 949.851.7450
5    Facsimile:  949.851.6926

6    Counsel for Committee of Creditors Holding
      Unsecured Claims

7

8                    UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11   In re                                        CASE NO. 8:10-24771 RK

12   **CRYSTAL CATHEDRAL**                         Chapter 11 Proceeding
      **MINISTRIES, a California non-profit**
13   **corporation,**                              **CHAPTER 11 PLAN FILED BY THE**
                                                    **OFFICIAL COMMITTEE OF CREDITORS**
14                    Debtor and                    **HOLDING UNSECURED CLAIMS**
                      Debtor-in-Possession.
15                                                  **Plan Confirmation Hearing:**
                                                    Date:
16                                                  Time:
                                                    Place: **5D – 5th Floor**
17                                                           **411 W. Fourth Street**
                                                             **Santa Ana, CA 92701**
18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical)* Ringstad & Sanders L.L.P. 2030 Main Street, 12th Floor Irvine, California 92614 949.851.7450

**TABLE OF CONTENTS**

I.    INTRODUCTION                                                                 5

II.   DEFINITIONS AND RULES OF INTERPRETATION                                      5

      2.1   Definitions                                                            5
      2.2   Rules of Construction                                                 15
      2.3   Exhibits                                                              16

III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS                        16

      A.    General Overview                                                      16
      B.    Unclassified Claims                                                   16
            1.    Administrative Claims                                           16
            2.    Priority Tax Claims                                             19
      C.    Classified Claims and Interests                                       20
            1.    Class 1:   Secured Claim of Orange County Treasurer
                            and Tax Collector                                     21
            2.    Class 2:   Secured Claim of the Los Angeles County
                            Treasurer and Tax Collector                           22
            3.    Class 3:   Secured Claim of Farmers & Merchants Bank of
                            Long Beach                                            23
            4.    Class 4:   Secured Claim of Grant & BCG, LLC                    24
            5.    Class 5:   Secured Claim of GE Capital Public Finance, Inc      25
            6.    Class 6:   Secured Claim of Canon Financial Services            26
            7.    Class 7:   Secured Claim of PNC Equipment Finance, LLC          28
            8.    Class 8:   Secured Claim of Credit Managers Association
                            ("CMA") in Trust for Creditors                        29
            9.    Class 9:   Secured Claim of Morgan Stanley Bank, N.A.           30
            10.   Class 10: Secured Claim of Toyota Motor Credit Corp.            31
            11.   Class 11: Claims of Holders of Vested Interests in
                            Memorial Gardens                                      32
            12.   Class 12: Priority Unsecured Claims                             33
            13.   Class 13: Class of General Unsecured Claims                     33
            14.   Class 14: Claims of Insiders                                    35
            15.   Class 15: Endowment Fund                                        35

IV.   MEANS FOR IMPLEMENTING THE PLAN                                             36

      A.    Means of Performing the Plan                                          36
            1.    Funding for the Plan                                            36
            2.    Sale of Real Property Assets of the Estate                      40
            3.    Sale of Personal Property                                       41
            4.    Use of Real Personal Property Prior to Sale                     41
            5.    Post-Confirmation Disbursements                                 42
            6.    Post-Confirmation Abandonment Following Payment in Full
                            of All Plan Obligations                               43
            7.    Post Confirmation Committee                                     43
            8.    Compliance with California State Law Governing the Transfer
                            of Property by a Nonprofit Corporation                43

V.    TREATMENT OF MISCELLANEOUS ITEMS                                            44
      A.    Avoidance Actions                                                     44

Ringstad & Sanders
L.L.P.
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

|  |  | B. | Disposition of Assets | 45 |
|  |  | C. | Compromise of Controversies | 45 |
|  |  | D. | Bankruptcy Court Approval Relative to Post-Confirmation Matters | 45 |
|  |  | E | Right of Setoff | 46 |
|  |  | F. | Cash Payments | 46 |

**VI.   DISTRIBUTIONS** — 46

|  |  | A. | Distributions | 46 |
|  |  |  | 1. Dates of Distributions | 46 |
|  |  |  | 2. Limitation of Liability | 47 |
|  |  | B. | Instruments | 47 |
|  |  |  | 1. Rights of Persons Holding Instruments | 47 |
|  |  |  | 4. Cancellation of Liens | 47 |
|  |  | C. | De Minimis Distributions | 47 |
|  |  | D. | Delivery of Distributions | 48 |
|  |  | E. | Undeliverable Distributions | 48 |
|  |  | F. | Disposition of Unclaimed Property | 48 |

**VII.   OBJECTINS TO CLAIMS AND DISPUTED CLAIMS** — 49

|  |  | A. | Objections to Claims | 49 |
|  |  | B. | Treatment of Disputed Claims | 50 |
|  |  |  | 1. No Distribution Pending Allowance | 50 |
|  |  |  | 2. Distribution After Allowance | 50 |
|  |  |  | 3. Reserves for Disputed Claims | 50 |

**VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES** — 51

|  |  | A. | Executory Contracts Assumption/Rejection | 51 |
|  |  | B. | Payments of Cure Claims | 52 |
|  |  | C. | Retention of Property Rights | 52 |
|  |  | D. | Bar Date for Rejection Damages | 52 |
|  |  | E. | Claims Schedule | 52 |

**VI.   EFFFECT OF CONFIRMATION OF PLAN** — 53

|  |  | A. | Discharge | 53 |
|  |  | B. | Injunction | 53 |
|  |  | C. | Tax Consequences of the Plan | 54 |
|  |  | D. | Revesting of Property in the Debtor | 55 |

**X.   LIMITATION OF LIABILITY AND RELEASES** — 55

|  |  | A. | No Liability for Solicitation or Participation | 55 |
|  |  | B. | Limitation of Liability | 56 |

**XI.   CONDITIONS OF CONFIRMATION AND EFFECTIVENESS** — 56

|  |  | A. | Condition Precedent to Plan Effectiveness | 56 |
|  |  | B. | Waiver of Conditions | 56 |

**XII.   RETENTION OF JURISDICTION** — 56

**XIII.   MODIFICATION OF THE PLAN; CRAMDOWN** — 58

|  |  | A. | Modification of Plan | 58 |
|  |  | B. | Nonconsensual Confirmation | 59 |

**XIV.   MISCELLANEOUS** — 59

|  |  | A. | Payment of Statutory Fees | 59 |

Ringstad & Sanders
— L.L.P. —
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

B.    Payment Dates                                                              59
C.    Other Documents and Actions                                               59
D.    Notices                                                                   60
E.    Governing Law                                                             60
F.    Binding Effect                                                            60
G.    Successors and Assigns                                                    61
H.    No Waiver                                                                 61
I.    Inconsistencies                                                           61
J.    Exemption from Certain Transfer Taxes and Recording Fees                  61
K.    Post-Confirmation Status Report                                           61
I.    Post –Confirmation Conversion/Dismissal                                   62
M.    Changes in Rates Subject to Regulatory Commission Approval                62
N.    Final Decree                                                              62

**Exhibit "A" – Liquidation Analysis**
**Exhibit "B" – Feasibility Analysis/Key Assumptions**
**Exhibit "C" – Financial Projections**

Ringstad & Sanders
— L.L.P. —
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

# I.

# INTRODUCTION

Crystal Cathedral Ministries a California nonprofit corporation (the "CCM" or the "Debtor"), is the Debtor and Debtor in Possession in this Chapter 11 bankruptcy case. On October 9, 2009, the Debtor commenced this bankruptcy proceeding by filing a voluntary petition under Chapter 11 the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. (the "Petition Date"). This document is the Chapter 11 Plan ("Plan") proposed by the Official Committee of Creditors Holding Unsecured Claims (the "Committee" or the "Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a combination liquidation and reorganization Plan. In other words, the Committee seeks to accomplish payments under the Plan by consummation of a sale or possibly a sale/leaseback transaction with one of several potential buyers of the Debtor's real estate assets, the sale of certain specified personal property assets of the Debtor, the distribution of the net proceeds received from such transactions to the creditors of the Estate in the manner described herein, and the subsequent continued operation of the Debtor's ministry and related operations for the general benefit of the ministry's community.

The Effective Date of the proposed Plan is as defined at 2.1.39 herein below, unless such day falls on a weekend or legal holiday, in which case the Effective Date shall be the first business day following such weekend or legal holiday.

# II.

# DEFINITIONS AND RULES OF INTERPRETATION

**2.1**    **Definitions.** The following defined terms are used in this Plan. Any capitalized term that is not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules.

2.1.1. "Administrative Claim" means a Claim for costs and expenses of the administration of a Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, including,

Ringstad & Sanders
LLP.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  without limitation, a Claim of a Professional employed at the expense of an Estate and any fees or

2  charges asserted against an Estate under 28 U.S.C. § 1930.

3      2.1.2.  "Administrative Tax Claim" means a request by a Governmental Unit for payment

4  of Administrative Claims for Taxes (and for interest or penalties related to such Taxes) for any

5  tax year or period, all or any portion of which occurs within the period from and including the

6  Petition Date through and including the Effective Date.

7      2.1.3.  "Allowable Interest Rate" means the interest rate that is fixed at one percentage

8  point (1%) over the prime rate of interest as published in the Wall Street Journal on the Effective

9  Date.

10      2.1.4.  "Allowed Administrative Claim" means an Administrative Claim allowed

11  pursuant to Sections 503(b) or 507(a)(1) of the Bankruptcy Code or pursuant to 28 U.S.C. § 1930.

12      2.1.5.  "Allowed Claim"  means a Claim that is either (i) listed in the Schedules filed with

13  the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or

14  unknown as to amount and as to which no timely objection has been filed; or (ii) with respect to

15  which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and

16  as to which no objection was filed within the time period fixed by the Bankruptcy Code, the

17  Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or as to which any such objection

18  has been determined by a Final Order.  The amount of an Allowed Claim shall be as follows:

19  (a) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the

20  applicable Bar Date, the amount of the Creditor's Claim as listed in the Schedules as neither

21  disputed, contingent, unliquidated or unknown; or (b) if the Creditor filed a Proof of Claim with

22  the Bankruptcy Court on or before the applicable Bar Date, (1) the amount stated in such Proof of

23  Claim if no objection to such Proof of Claim was filed within the time period fixed by the

24  Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (2) the

25  amount thereof as fixed by a Final Order of the Bankruptcy Court if an objection to such Proof of

26  Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the

27  Plan or order of the Bankruptcy Court.  Any Claim that is not filed by the applicable Bar Date and

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  that is listed as disputed, unliquidated, contingent or unknown, or that is not allowed under the

2  terms of the Plan, shall be zero, and no Distribution shall be made on account of such Claim.

3      2.1.6.  "<u>Allowed Cure Claim</u>" means an Allowed Claim for Cure pursuant to the terms of

4  the Plan and a Final Order.

5      2.1.7.  "<u>Allowed Deficiency Claim</u>" means that portion of an Allowed Claim which is in

6  excess of the value of any collateral which is security for the repayment of the Claim, calculated

7  in accordance with the provisions of Section 506 of the Bankruptcy Code.  Unless the Creditor

8  should make an election under Section 1111(b) of the Bankruptcy Code, an Allowed Deficiency

9  Claim is treated hereunder as a Class 3 Allowed General Unsecured Claim.

10      2.1.8.  "<u>Allowed General Unsecured Claim</u>" means an unsecured Allowed Claim against

11  the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code

12  and which is not secured by a perfected security interest in any asset of the Estate, or to the extent

13  that the value of the interest is less than the amount of such Allowed Claim, including, without

14  limitation, a Rejection Claim.

15      2.1.9.  "<u>Allowed Priority Tax Claim</u>" means an Allowed Claim provided for by

16  Section 507(a)(8) of the Bankruptcy Code.

17      2.1.10. "<u>Allowed Priority Unsecured Claim</u>" means an unsecured Allowed Claim entitled

18  to priority under Sections 507 of the Bankruptcy Code.

19      2.1.11. "<u>Allowed Section 503(b)(9) Administrative Claim</u>" means an Allowed Claim

20  entitled to administrative priority pursuant to Section 503(b)(9) of the Bankruptcy Code.

21      2.1.12. "<u>Allowed Secured Claim</u>" means an Allowed Claim secured by a valid and

22  unavoidable Lien against property in which an Estate has an interest, or which is subject to setoff

23  under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance

24  with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim

25  in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the

26  case may be.

27      2.1.13. "<u>Avoidance Action</u>" means any action or proceeding filed pursuant to the

28  provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code, or

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  any similar action or proceeding filed to recover property for or on behalf of an Estate or to avoid

2  a Lien or transfer.

3  2.1.14. "Bankruptcy Code" means Title 11, United States Code, as amended.  All citations

4  in the Plan to Section numbers are to the Bankruptcy Code, unless otherwise expressly stated

5  herein.

6  2.1.15. "Bankruptcy Court" means the United States Bankruptcy Court for the Central

7  District of California, Santa Ana Division, which has jurisdiction over the Case and the Estate of

8  the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful

9  authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code

10 and all applicable statutes, rules and regulations pertaining thereto.

11 2.1.16. "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy

12 Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy

13 Court for the Central District of California, as amended.

14 2.1.17. "Bar Date(s)" means the last date for creditors whose claims are not scheduled, or

15 are scheduled as disputed, contingent, or unliquidated in the Debtor's Schedules to file Proofs of

16 Claim, except for the following Claims:  (i) Administrative Claims other than Section 503(b)(9)

17 Administrative Claims, and (ii) Rejection Claims.  The Bar Date for General Unsecured Creditors

18 was February 28, 2011.  A Bar Date of September 12, 2011 has been established for parties who

19 believe they may have claims arising out of donations to the Debtor for a specified purpose.

20 2.1.18. "Budget" means an annual operating budget of the Reorganized Debtor which

21 shall be approved by the Independent Board at least 30 days prior to the expiration of the then

22 current approved annual budget.

23 2.1.19. "Business Day" means any day, other than a Saturday, a Sunday or a "legal

24 holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

25 2.1.20. "Case" means the Chapter 11 case commenced by the Debtor on the Petition Date

26 and pending before the Bankruptcy Court, as Case No. 8:10-bk-24771 RK.

27 2.1.21. "Cash" means cash and cash equivalents including, but not limited to, checks or

28 similar forms of payment or exchange.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
(949) 851.7450

1    2.1.22. "Claim" means (i) a right to payment from the Debtor, whether or not such right to

2    payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

3    disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) a right to an equitable remedy

4    for breach of performance if such breach gives rise to a right to payment from the Debtor whether

5    or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed,

6    contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

7    2.1.23. "Claims Objection Deadline" means, the latest of the following: (i) the two

8    hundred and fortieth (240th) day after the Effective Date; (ii) with respect to a specific Claim, the

9    one hundredth (100th) day after a Proof of Claim with respect to such Claim is filed by a

10    Creditor, or (iii) such greater period of limitation as may be fixed or extended by the Bankruptcy

11    Court or by agreement between the Debtor or Reorganized Debtor and the Creditor.

12    2.1.24. "Class" means the group of Claims classified in Article IV of the Plan pursuant to

13    Sections 1122 and 1123 of the Bankruptcy Code.

14    2.1.25. "Committee" means the duly appointed and acting Official Committee of

15    Creditors Holding Unsecured Claims in the Case.

16    2.1.26. "Condominium" means that certain residential real property located at 31423

17    Coast Highway, #33, Laguna Beach, California.

18    2.1.27. "Confirmation Date" means the date on which the Bankruptcy Court enters the

19    Confirmation Order.

20    2.1.28. "Confirmation Hearing" means the hearing(s) scheduled by the Bankruptcy Court

21    for the purpose of considering the confirmation of the Plan.

22    2.1.29. "Confirmation Order" means the order, as entered, of the Bankruptcy Court

23    confirming the Plan.

24    2.1.30. "Creditor" means the holder of an Allowed Claim or Allowed Administrative

25    Claim.

26    2.1.31. "Crystal Cathedral Campus" means that improved commercial real properties

27    located at located at 12186 Salerno Street, 12051 Lewis Street, 12141 Lewis Street, 13280

28    Chapman Avenue and 13350 Chapman Avenue in the City of Garden Grove, California.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

2.1.32. "Cure Claim" means the amount necessary to cure the defaults under any of the executory contracts and unexpired leases assumed under the Plan.

2.1.33. "Cure Claims Schedule" means the schedule of the Cure Claims, which shall be filed with the Bankruptcy Court prior to the Confirmation Hearing.

2.1.34. "Debtor" means Crystal Cathedral Ministries. For the purpose of this Disclosure Statement, reference to "Debtor" shall also include the Reorganized Debtor.

2.1.35. "Disclosure Statement" means the Committee's Disclosure Statement, as the same may be amended or modified from time to time.

2.1.36. "Disputed Claim" means all or any part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and the Claim is listed in the Schedules as unliquidated, disputed, contingent or unknown, or; (ii) the Claim is the subject of a timely objection or request for estimation which is filed on or before the Claims Objection Deadline, which objection or request for estimation has not been withdrawn or determined by a Final Order. In addition, prior to the earlier of (a) the Claims Objection Deadline, and (b) such date as the Bankruptcy Court allows the Claim pursuant to a Final Order, any Claim that is evidenced by a Proof of Claim shall be deemed a Disputed Claim for purposes of calculating and making any Distributions under the Plan if: (1) no Claim corresponding to the Proof of Claim is listed in the Schedules, (2) the Claim corresponding to the Proof of Claim is listed in the Schedules as disputed, contingent, unliquidated or unknown, (3) the amount of the Claim as specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules as not disputed, not contingent, and liquidated, but only to such extent, or (4) the priority or classification of the Claim as specified in the Proof of Claim differs from the priority of any corresponding Claim listed in the Schedules.

2.1.37. "Disputed Claims Reserve" means a segregated, interest-bearing trust account for the benefit of General Unsecured Creditors, established at a financial institution that is an authorized depository under United States Trustee guidelines, into which the Plan Agent or Trustee will deposit the Distributions required by Article X hereof.

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

2.1.38. "<u>Distribution</u>" means the Cash that is required to be distributed under the Plan to the holders of Allowed Claims.

2.1.39. "<u>Effective Date</u>" means a date selected by the Committee, but in no event later than the one hundred and twentieth (120th) calendar day after the Confirmation Date.

2.1.40. "<u>Estate</u>" means the Debtor's bankruptcy estate created under Section 541 of the Bankruptcy Code in the Case.

2.1.41. "<u>Estate Claims</u>" means any and all claims and causes of action that constitute property of the Estate including, but not limited to, any Avoidance Actions and any causes of action or claims for recovery of any amounts owing to the Debtor or the Estate by third parties or by Insiders.

2.1.42. "<u>F&M</u>" means Farmers & Merchants Bank of Long Beach.

2.1.43. "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which a Debtor, a Reorganized Debtor, or the Committee is a party, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move to reargue, or to rehear shall have been waived in writing in form and substance satisfactory to the Committee, the Debtor or to the Reorganized Debtor.

2.1.44. "<u>First Payment Date</u>" means the first Business Day of the first full month following the Effective Date.

2.1.45. "<u>General Administrative Claims Bar Date</u>" means the date by which all requests for payment of Administrative Claims, with the exception of Administrative Tax Claims and Section 503(b)(9) Administrative Claims, shall be filed and served upon the Committee and the Debtor, which date shall be no later than the date of the Confirmation Hearing.

2.1.46. "<u>General Unsecured Claim</u>" means an unsecured Claim against the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, a Rejection Claim.

2.1.47. "General Unsecured Creditor" means the holder of an Allowed General Unsecured Claim.

2.1.48. "Governmental Unit" shall have the meaning provided in Section 101(27) of the Bankruptcy Code.

2.1.49. "Initial Distribution Date" means the date on which the first Distribution is made to a Class.

2.1.50. "Insiders" means the following individuals: Robert H. Schuller; Arvella Schuller; Sheila Schuller Coleman; Jim Coleman; Jeanne Dunn; Paul Dunn; Carol Milner; Tim Milner; Gretchen Penner; James Penner; Paige Penner; Neva Penner-Klaassen; Nick Klaassen; Diane Penner-Kirchner; Ashley Dennison-Kirchner; Courtney Dennison-Kirchner; Robert A. Schuller; and Donna Schuller, the Robert Harold Pension Trust, and other parties to be identified by the Committee prior to the Confirmation Hearing.

2.1.51. "Lien" means any lien, encumbrance, pledge or other charge against property.

2.1.52. "Memorial Gardens" means that portion of the Crystal Cathedral Campus upon which burial plots and/or "niches" are located and maintained for the benefit of vested interest holders.

2.1.53. "Net Proceeds" means the proceeds generated from the pursuit of Estate Claims, net of all attorneys' fees and other costs necessary to recover such proceeds.

2.1.54. "Net Sales Proceeds." The Cash generated from the sale(s) or liquidation of the Debtor's assets valued in excess of $1,000.00, less payment of selling expenses, closing costs, taxes, association dues, and any associated expenses incurred in furtherance of such sales or liquidation of such assets.

2.1.55. "Net Sales Proceeds Account." The Plan Agent or Trustee shall establish a separate account at an FDIC insured bank into which all Net Sale Proceeds shall be deposited from the sale of any of its assets valued in excess of $1,000.00.

2.1.56. "Personal Property Assets" means all non-real property assets of the Debtor or the Debtor's Estate, including a coin collection, and artwork.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17ᵗʰ Floor
Irvine, California 92614
949.851.7450

1      2.1.57. "Petition Date" means the date on the Debtor filed its petition for relief under

2    Chapter 11 of the Bankruptcy Code (October 18, 2010).

3      2.1.58. "Plan" means the Committee's Chapter 11 Plan of Reorganization, together with

4    the exhibits thereto, as the same may be amended or modified from time to time.

5      2.1.59. "Plan Agent" means a party to be designated by the Committee to administer the

6    Debtor's assets, including liquidation of same, and distribution of all net proceeds to the holders

7    of Allowed Claims.

8      2.1.60. "Post-Confirmation Expenses" means the fees and expenses incurred by the Plan

9    Agent, the Committee, or the Debtor and their respective professionals following the

10    Confirmation Date (including the fees and costs of Professionals) for the purpose of

11    (i) prosecuting and liquidating the Avoidance Actions; (ii) objecting to and resolving Disputed

12    Claims and Disputed Liens; (iii) selling or otherwise liquidating the assets; (iv) effectuating

13    Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Debtor's

14    Chapter 11 Case.

15      2.1.61. "Priority Tax Claim" means any Claim provided for by Section 507(a)(8) of the

16    Bankruptcy Code.

17      2.1.62. "Priority Tax Holder" means a holder of an Allowed Priority Tax Claim.

18      2.1.63. "Priority Unsecured Claim" means any Claim, other than an Administrative Claim

19    or a Tax Claim, to the extent entitled to priority under Section 507of the Bankruptcy Code.

20      2.1.64. "Professional" means a person or entity employed by the Committee, the Debtor

21    or by the Plan Agent pursuant to a Final Order in accordance with Sections 327 or 1103 of the

22    Bankruptcy Code.

23      2.1.65. "Proof of Claim" means a written statement filed in a Case by a Creditor in which

24    the Creditor sets forth the amount of its Claim, in accordance with Rule 3001 of the Bankruptcy

25    Rules.

26      2.1.66. "Pro Rata" means proportionately, so that with respect to any Distribution in

27    respect of any Allowed Claim, the ratio of (i) (a) the amount of property distributed or reserved

28    on account of such Allowed Claim to (b) the amount of such Allowed Claim, is the same as the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

ratio of (ii) (a) the amount of property distributed or reserved on account of all Allowed Claims of the Class sharing in such Distribution to (b) the amount of all Allowed Claims in such Class.

2.1.67. "Real Property Assets" means the Crystal Cathedral Campus and the Condominium

2.1.68. "Rejection Claim" means any Claim based upon, or arising from, the rejection of any executory contract or unexpired lease pursuant to order of the Bankruptcy Court or pursuant to the Plan.

2.1.69. "Reorganized Debtor" means the Debtor, as reorganized under the terms of the Plan on and after the Effective Date.

2.1.70. "Sales Period" means the time period that the Plan Agent or the Trustee is provided under the Plan to consummate a sale or liquidation of the Real Property Assets subject to the claims of Secured Claimants. The Sales Period shall commence on the Confirmation Date and shall expire sixty days (60) days after the Effective Date, unless extended by Order of the Bankruptcy Court.

2.1.71. "Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as required by Section 521(1) of the Bankruptcy Code, Rules 1007(a)(3) and (b)(1) of the Bankruptcy Rules, and Official Bankruptcy Form No. 6, as the Schedules may be amended from time to time.

2.1.72. "Section 503(b)(9) Administrative Claim" means any Claim, to the extent allowable pursuant to Section 503(b)(9) of the Bankruptcy Code and the Plan.

2.1.73. "Secured Claim" means any Claim, including interest, reasonable attorneys' fees, costs, and charges, to the extent allowable pursuant to Section 506(b) of the Bankruptcy Code and the Plan, that is secured by a Lien on property in which a Debtor has an interest or that is subject to recoupment or setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Secured Claim in the Debtor's interest in the property, determined pursuant to Section 506(a) of the Bankruptcy Code.

2.1.74. "Secured Creditors" means, collectively all Creditors holding Secured Claims, which are described in Classes 1 through 10.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

2.1.75. "Tax" means any tax, charge, fee, levy, or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to, such assessments.

2.1.76. "Tax Claims" means any Claim, pre-petition or post-petition, relating to a Tax.

2.1.77. "Trustee" means a Chapter 11 Trustee that may be appointed by the Bankruptcy Court upon request by the Committee and for cause shown.

2.1.78. "Unclaimed Property" means any Distribution of Cash or other property to a Creditor that is returned to the Plan Agent as undeliverable.

2.1.79. "Unclaimed Property Reserve" means an interest-bearing segregated account in which Unclaimed Property shall be set aside and held.

2.1.80. "United States Trustee" means the Office of the United States Trustee. "Administrative Claim" means a Claim for costs and expenses of the administration of a Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, a Claim of a Professional employed at the expense of an Estate and any fees or charges asserted against an Estate under 28 U.S.C. § 1930.

**2.2** **Rules of Construction.** For the purposes of this Plan, unless otherwise provided in this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing document, Exhibit or schedule filed or to be filed means such document or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to an entity as a holder of a Claim includes that entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (vi) the words "herein", "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    contract, instrument, release, indenture, agreement, or other document being in a particular form

2    or on particular terms and conditions means that such document shall be substantially and

3    materially in such form or substantially and materially on such terms and conditions; (viii) the

4    rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent

5    such rules are not inconsistent with the express terms of this Plan or any other provision in this

6    Section 2.2.

7        **2.3    Exhibits.**    All schedules to this Plan are incorporated into and are a part of this

8    Plan as if set forth in full herein.

9                                          **III.**

10        **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

11   **A.    General Overview.**

12        As required by the Bankruptcy Code, the Plan places Claims into various Classes

13   according to their right to priority.  However, in accordance with the provisions of

14   Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Section 503(b)(9)

15   Administrative Claims, and Priority Tax Claims are deemed "unclassified."  These Claims are not

16   considered impaired, and they do not vote on the Plan, because they are automatically entitled to

17   specific treatment provided for them in the Bankruptcy Code.  As such, the Committee has not

18   placed these Claims in a Class.  The treatment of these unclassified Claims is as provided below.

19   **B.    Unclassified Claims.**

20        **1.    Administrative Claims.**  Administrative Claims are Claims for the expenses of

21   administering a debtor's Case that are allowed under Bankruptcy Code Section 507(a)(2), as well

22   as Claims for goods received by the debtor in the ordinary course of business within 20 days of

23   the order for relief.  The Bankruptcy Code requires that all administrative claims be paid on the

24   effective date of a Chapter 11 plan, unless a particular creditor agrees to a different treatment of

25   its claim.  The treatment of Administrative Claims and Section 503(b)(9) Administrative Claims

26   in the Plan is as described below.

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    (a)    Payment Generally. Except to the extent that the holder of an Allowed

2   Administrative Claim agrees to a different treatment of its Administrative Claim, each Allowed

3   Administrative Claim shall be Paid in Full, in Cash, on the latest of (i) the Effective Date, (ii) the

4   tenth (10th) Business Day after the date upon which such Administrative Claim becomes an

5   Allowed Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim

6   becomes due according to its terms.

7    (b)    Subordination of Insiders' Claims. The Claims of Insiders[1], including, but not

8   limited to, Administrative Claims, that Insiders, individually or collectively, have or may have

9   against the Estate will be subordinated until all Allowed General Unsecured Claims are Paid in

10  Full. If Insiders object to subordination of their Administrative or General Unsecured Claims, if

11  any are Allowed, such claims will be treated as Administrative Claims following resolution of the

12  formal objections to be filed to each such Claim by the Committee.

13   (c)    Administrative Claims Bar Date. Any holder of an Administrative Claim that does

14  not file and properly serve such a request for payment by the General Administrative Claims Bar

15  Date and the Bar Date for Section 503(b)(9) Claims, as the case may be, shall be forever barred

16  from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, its Estate,

17  or any of its property, or the Committee. Notwithstanding anything to the contrary contained in

18  the foregoing, (i) any Governmental Unit may assert an Administrative Tax Claim or other post-

19  petition Tax Claim pursuant to the statutory requirements applicable thereto without regard to the

20  General Administrative Claims Bar Date; and (ii) holders of accrued post-petition *ad valorem* Tax

21  Claims against property owned by the Reorganized Debtor shall retain any Liens that they may

22  have pursuant to applicable law on account of such Tax Claims, and holders of such Tax Claims

23  shall be paid the amount of their Tax Claims in the ordinary course of the Reorganized Debtor's

24

25  ───────────────
[1] The Insiders' Claims include (but are not limited to): Robert A. Schuller: Claim No. 221 –
26  $1,400,000.00; Jeanne Dunn: Claim No. 229 - $25,908.80; Paul Dunn: Claim No. 230 -
$52,037.57; Timothy Milner: Claim No. 241 - $98,313.00; Arvella Schuller: Claim No. 242 - not
27  stated; Carol Milner: Claim No. 243 - $10,615; Robert Harold, Inc. and Dr. Robert H. Schuler:
Claim No. 245 – unknown; Robert Harold, Inc.: Claim No. 246 - $223,078.09.
28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2050 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1  ministry without the requirement that a Proof of Claim or request for payment of such Tax Claim

2  be filed with the Bankruptcy Court.

3        (d)    Projected Administrative Claims. The following chart is an estimate of all of the

4  Debtor's projected and unpaid Administrative Claims.[2] The Committee acknowledges that

5  Chapman University, a non-profit corporation, and the Roman Catholic Bishop of Orange, a

6  California corporation sole, must have "due diligence" undertaken in connection with the

7  purchase transactions contemplated by the Plan and described in Article IV below. In the event

8  that either Chapman University or the Roman Catholic Bishop of Orange incur actual out-of-

9  pocket due diligence expenses, and are not the successful purchaser of the Crystal Cathedral

10 Campus for any reason (other than as a result of a unilateral decision not to proceed with a

11 contemplated transaction), the Committee will not oppose an Administrative Claim request by

12 either for the allowance by the Bankruptcy Court of a "substantial contribution" administrative

13 claim in this case, such that its reasonable out-of-pocket expenses, in an amount not to exceed

14 $100,000 per claimant, will be reimbursed by the Estate.

15        The following chart list the know Administrative Claims and their treatment under the

16 Plan:

| Name | Amount Owed |
|---|---|
| Clerk's Office Fees | $0.00 (est.) |
| Office of the U. S. Trustee Fees | $0.00 (est.) |
| Orange County Treasurer Tax and Collector | 59,002.00 (est.) |
| Winthrop Couchot P.C. (Debtor's General Insolvency Counsel) | $0.00 (est.) |
| Palmieri, Tyler, Wiener & Waldron, LLP (Debtor's Special Corporate Counsel) | $40,000.00 (est.) |
| Lutzker & Lutzker, LLP (Debtor's Special IP Counsel) | $10,000.00 (est.) |
| Singer -- Lewak, LLP (Debtor's Accountant) | $0.00 (est.) |
| FTI Consulting, Inc. (Debtor's Financial Advisor and Consultant) | $600,000.00 (est.) |
| Ringstad & Sanders, LLP (Committee's Counsel) | $0.00 (est.) |

[2] Based on its preliminary review of the Schedules and Claims Register, the Committee does not believe that there are any Section 503(b)(9) Claims.

| Name | Amount Owed |
|---|---|
| BSW & Associates (Committee's Financial Consultant) | $10,485.00 (est.) |
| Cure Claims | $67,875.00 |
| Chapman University/The Roman Catholic Biship of Orange (potential due diligence costs of unsuccessful buyer) | Unknown, but not to exceed $100,000 per buyer |
| **TOTAL** | $887,487.50 (est.)[3] |

The Court must approve all professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

2.     **Priority Tax Claims**. Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8)priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the commencement of the Debtor's bankruptcy case, and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by this Plan.

The Debtor scheduled or creditors have asserted the following Priority Tax Claims:

| Agency | Amount | Type |
|---|---|---|
| Cal. Employment Development Dept. | $6,743.95 | Payroll Taxes |
| Orange County Tax Collector | $57,845.38 | Property Taxes |
| Cal. State Board of Equalization | $1,198.00 | Sales Taxes |

Under the terms of this Plan, all Priority Tax Claims, to the extent that such claims are determined to be claim allowable under Section 507(a)(8), and in the amount allowed, will be paid in full, together with such interest as is permitted by law, on the First Distribution Date, as

[3] The majority of the professionals have obtained payment of a substantial amount of their post-petition fees and costs on a monthly basis during the Case. The Committee's estimate of fees owed to the Professionals as of the Effective Date assumes that the Debtor will continue to make monthly payments to Professionals through the Effective Date, and accounts for any pre-petition retainers paid by the Debtor.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  defined herein.  To the extent that the proceeds available on the First Distribution Date are

2  insufficient to pay in full all Priority Tax Claims, distribution of available funds will be made pro

3  rata to the holders of the Priority Tax Claims, and any remaining balance due to the holders of

4  Priority Tax Claims will be paid in full on the Second Distribution Date.  In the event that an

5  objection to the claim of the holder of a Priority Tax Claim is pending on the date that distribution

6  to such holder is due, then the Plan Agent or Trustee shall reserve the amount to which such

7  holder would be entitled if the claim asserted by such holder were allowed in full, and shall pay

8  such holder the amount to which such holder is entitled upon entry of a Final Order allowing such

9  holder's claim.

10  **C.    Classified Claims and Interests.**

11      **General Overview.**  As required by the Bankruptcy Code, the Plan places Claims into

12  various Classes according to their right to priority and other relative rights.  The table below lists

13  each Class of Secured Claims established under the Plan and states whether each Class is

14  impaired or is unimpaired by the Plan.  A Class is "unimpaired" if the Plan leaves unaltered the

15  legal, equitable and contractual rights to which the holders of Claims in the Class are entitled,

16  with certain exceptions specified in the Bankruptcy Code.  The Plan sets forth the treatment that

17  each Class will receive under the Plan.

18      **Classes of Secured Claims.**

19      Secured Claims are Claims secured by liens on property of the Estate. The following is a

20  description of all Classes of the Debtor's Secured Claims and their treatment under this Plan:

| Class | Creditor | Impaired or Unimpaired |
|-------|----------|------------------------|
| Class 1 | Allowed Secured Claim of Orange County Treasurer and Tax Collector | Unimpaired |
| Class 2 | Allowed Secured Claim of Los Angeles County Treasurer and Tax Collector | Unimpaired |
| Class 3 | Allowed Secured Claim of F&M | Impaired |
| Class 4 | Allowed Secured Claim of Grand & BCG, LLC | Impaired |
| Class 5 | Allowed Secured Claim of GE Capital Public Finance | Unimpaired |
| Class 6 | Allowed Secured Claim of Canon Financial Services, Inc. | Impaired |
| Class 7 | Allowed Secured Claim of PNC Equipment Finance, LLC | Impaired |

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| Class 8 | Allowed Secured Claim of Credit Management Association in Trust for Creditors | Impaired |
|---------|---------------------------------------------------------------------------------|----------|
| Class 9 | Allowed Secured Claim of Morgan Stanley Bank, N.A. | Unimpaired |
| Class 10 | Allowed Secured Claim of Toyota Motor Credit Corp. | Impaired |

1.    **Class 1:  Secured Claim of County of Orange County.**

Class 1 is all Allowed Secured Claims of the County of Orange for secured real property taxes.  The Schedules filed by the Debtor identify six separate tax liens recorded by the County of Orange totaling $20,851.  The Orange County Treasurer Tax Collector filed a Proof of Claim asserting outstanding secured real property taxes in the amount of $244,827.27.

Upon the sale of any real property owned by the Debtor, the full amount of real property taxes due to the County of Orange relating to the real property that is the subject of the sale shall be paid in full upon the close of escrow for the sale.  If any real property upon which the County of Orange has a lien for real property taxes is not sold by the Plan Agent or the Trustee and is abandoned to the Debtor pursuant to the terms of the Plan, then the lien of the County of Orange upon such parcel shall be deemed unmodified and the County of Orange may pursue all legal remedies that it may have for the nonpayment of such real property taxes.

Until paid, the County shall retain all of its liens securing its Claims, unmodified, to the extent of the allowed amount of the County's Class 1 Claim as determined by the Bankruptcy Court.

///

///

///

///

///

///

///

///

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: County of Orange<br><br>Collateral description: (a) the Crystal Cathedral Campus; (b) the Condominium.<br><br>Priority of security interest: First<br><br>Total claim amount (est.): $244,827.27. | No | No | [See detailed description of the treatment of the claims, above.]<br><br>Treatment of claim:<br><br>Paid in full with interest as authorized by applicable law as described herein.<br><br>Treatment of lien:<br>Retained until Claim is paid. |

2.    **Class 2: Secured Claim of County of Los Angeles.**

Class 2 is the Allowed Secured Claim of the County of Los Angeles for secured personal property or other taxes. The Los Angeles County Treasurer and Tax Collector filed a Proof of Claim asserting a secured personal (marine) property tax Claim in the amount of $731.10. The Committee is informed and believes that the personal property which gives rise to this alleged Claim is not property of the Estate and intends to object to the Claim. In the interim, however, the Claim is provided for as described herein.

Upon the sale of the personal property owned by the Debtor, if any, subject to the lien of the County of Los Angeles, the full amount of taxes due to the County of Los Angeles shall be paid in full upon the close of escrow for the sale. If the personal property owned by the Debtor upon which the County of Los Angeles has a lien for personal property taxes is not sold by the Plan Agent and is abandoned to the Debtor pursuant to the terms of the Plan, then the lien of the County of Los Angeles upon such property shall be deemed unmodified and the County of Los Angeles may pursue all legal remedies that it may have for the nonpayment of such personal property taxes.

Until paid, the County shall retain all of its liens securing its Claim, unmodified, to the extent of the allowed amount of the County's Claim as determined by the Bankruptcy Court.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | **Secured claim of:** Los Angeles County Treasurer and Tax Collector **Collateral description:** Unknown. **Collateral value:** Unknown. **Priority of security interest:** First. **Total claim amount:** $ To be determined. | No | No | [See detailed description of the treatment of the claims, above.] **Treatment of claim:** Paid in full with interest as authorized by applicable law as described herein. **Treatment of lien:** Retained until Claim is paid. |

3.     **Class 3: Secured Claim of Farmers & Merchants Bank of Long Beach.**

Class 3 consists of the Allowed Secured Claim of Farmers & Merchants Bank of Long

Beach ("F&M"), which holds a Secured Claim for obligations secured by first and second priority

deeds of trust encumbering the Crystal Cathedral Campus. The Debtor scheduled the Claim of

F&M in the amount of $33,253,920.

Upon the sale of the Crystal Cathedral Campus, the entire Allowed Secured Claim of

F&M shall be paid in full upon the close of escrow for the sale. If the Crystal Cathedral Campus

is not sold by the Plan Agent and is abandoned to the Debtor pursuant to the terms of this Plan,

then the liens of F&M upon such real property shall be deemed unmodified and F&M may pursue

all legal remedies that it may have for the nonpayment of such Allowed Claim. If the sale

proceeds are insufficient to pay the Allowed Secured Claim of F&M in full, then the sale may not

close without the consent of F&M.

///

///

///

///

Ringstad & Sanders
L.L.P.
2030 Main Street, 13th Floor
Irvine, California 92614
(949) 851.7450

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | **Secured claim of:** Farmers & Merchants Bank of Long Beach<br><br>**Collateral description:** The Crystal Cathedral Campus<br><br>**Collateral value:** $55,732,770 per estimate in Debtor's Schedule A<br><br>**Priority of security interest:** First and second priority trust deeds encumbering the Crystal Cathedral Campus.<br><br>**Total claim amount:** $33,253,920 according to Debtor's Schedule D. F&M filed two proofs of claim describing a claim in the amount of $32,396,643.91 secured by a first priority trust deed on the Crystal Cathedral Campus and a claim in the amount of $3,163,750.01 secured by a second priority trust deed on the Crystal Cathedral Campus. | No | Yes | **Date of Payment:** Close of escrow for sale of the Crystal Cathedral Campus<br><br>**Interest Rate:** Contractual Non-Default Note Rate<br><br>**Retention of Liens:** The Class 3 Claimant will retain its liens with their existing level of priority until the Claim is paid in full. |

4.    **Class 4: Secured Claim of Grand & BCG, LLC.**

Class 4 consists of the Allowed Secured Claim of Grand & BCG, LLC ("G&B"), which holds a Secured Claim for an obligation secured by a first deed of trust encumbering the Laguna Beach Condominium. The Debtor listed the claim of G&B in the amount of $800,000.

Upon the sale of the Laguna Beach Condominium, the entire Allowed Secured Claim of G&B shall be paid in full upon the close of escrow for the sale. If the Laguna Beach

1  Condominium is not sold by the Plan Agent and is abandoned to the Debtor pursuant to Section

2  II.D.7 of this Plan, then the lien of G&B upon such real property shall be deemed unmodified and

3  G&B may pursue all legal remedies that it may have for the nonpayment of such allowed claim.

4  If the sale proceeds available are insufficient to pay the claim of G&B in full, then the sale may

5  not close without the consent of G&B.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of: Grand & BCG, LLC<br><br>Collateral description: The Laguna Beach Condominium<br><br>Collateral value: $1,127,000 per estimate in Debtor's Schedule A<br><br>Priority of security interest: First.<br><br>Total claim amount: $800,000 (est.) | No | Yes | Date of Payment:  Close of escrow for sale of Laguna Beach Condominium<br><br>Interest Rate:  Contractual Non-Default Note Rate<br><br>Retention of Lien:  The Class 4 Claimant will retain its lien with its existing level of priority until the Claim is paid in full. |

5.    **Class 5: Secured Claim of GE Capital Public Finance, Inc.**

Class 5 consists of the Allowed Secured Claim of GE Capital Finance, Inc. ("GE")

pursuant to a certain written promissory note and related documents (the "Master Security

Agreement") secured by a security interest in certain personal property consisting of alarm

systems and related equipment.  GE filed a Proof of Claim asserting a secured claim in the

amount of $82,544.74.

At the option of the ultimate buyer of the Crystal Cathedral Campus, the Plan Agent or the

Trustee, the Master Security Agreement and related documents will be assumed and the pre-

petition defaults in the approximate amount of $6,878.69 cured.  After the Effective Date, the

Plan Agent or its assignee will continue to pay the payments under the terms of the Master

Security Agreement through the term of same.  In the alternative, the collateral securing the Class

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  5 Allowed Secured Claim will be surrendered to GE on the Effective Date in full satisfaction of

2  such Claim.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | **Secured claim of:** GE Capital Public Finance, Inc. ("GE") **Collateral description:** Per Master Security Agreement **Collateral value:** Unknown **Priority of security interest:** First. **Total claim amount:** $ Unknown | No | No | **Date of Payment(s):** Cure payment in the approximate amount of $6,878.69 within 10 business days of Effective Date. After the Effective Date, the Plan Agent or its assignee will continue to pay the payments under the terms of the Master Security through the term of same. In the alternative, the collateral securing the Class 5 Allowed Secured Claim will be surrendered to GE on the Effective Date. **Interest Rate:** Contractual Non-Default Rate per Master Security Agreement. **Retention of Lien:** The Class 5 Claimant will retain its lien with its existing level of priority until its Allowed Secured Claim is paid in full. |

18      **6.**    **Class 6: Secured Claim of Canon Financial Services**.

19      Class 6 consists of the Allowed Secured Claim of Canon Financial Services ("Canon")

20  pursuant to a written lease of Canon Equipment and a UCC-1 financing statement filed on

21  September 24, 2008.  The Debtor listed the claim of Canon on Schedule D in the amount of

22  $201,305.87, and has advised the Committee that it believes the value of property securing the

23  claim of Canon is $20,859.00.

24      The Allowed Secured Claim of Canon is impaired under this Plan.

25      At the option of the ultimate buyer of the Crystal Cathedral Campus, the Plan Agent or the

26  Trustee, the Class 6 Claim shall be treated as follows:

27          (a)    Option 1:    Canon will receive on account of such Allowed Secured

28  Claim deferred cash payments totaling the allowed amount of such Allowed Secured

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Claim, equal to the value, as of the Effective Date, of Canon's interest in Canon's

2    collateral.  In particular, Canon shall be paid in equal monthly installments, with interest,

3    which shall accrue at the Allowable Interest Rate, commencing on the First Payment Date,

4    fully amortized over a period of 24 months based on the Allowed Secured Claim.  The

5    Allowed Secured Claim may be prepaid at any time without penalty or other charge.

6    Notwithstanding the foregoing, in the event any collateralized equipment is sold by the

7    Plan Agent or the Debtor or the Trustee, the proceeds generated from the disposition of

8    such sale, net of all expenses, shall be paid to Canon, up to the amount of the Allowed

9    Secured Claim, reflecting all payments made to Canon under the terms of this Plan.

10    The allowed Secured Claim shall continue to be secured by Canon's existing Lien

11    on the applicable collateral.  Upon full satisfaction of the Allowed Secured Claim,

12    Canon's Lien on its collateral shall be released and the Debtor or the Plan Agent or the

13    Trustee shall retain title to such collateral free and clear of such Lien.  Any Class 6

14    Allowed Deficiency Claim shall be treated as an Allowed General Unsecured Claim.

15    (b)    Option Two:    The Debtor or the Plan Agent or the Trustee shall return

16    Cannon its collateral on the Effective Date in full satisfaction of the Class 6 Allowed

17    Secured Claim.  Any Allowed Deficiency Claim shall be treated as a Class 13 Allowed

18    General Unsecured Claim.

19    (c)    Option Three:  Notwithstanding any contractual provision or applicable

20    law that entitles Canon to demand or to receive accelerated payment of its Claim after the

21    occurrence of a default: (i) any such default shall be cured, other than a default of a kind

22    specified in Section 365(b)(2) of the Bankruptcy Code; (ii) the maturity of such Claim

23    shall be reinstated as such maturity existed before such default; (iii) Canon shall be

24    compensated for any damages incurred as a result of any reasonable reliance by Canon on

25    such contractual provision or such applicable law; and (iv) the legal, equitable or

26    contractual rights of Canon shall otherwise be unaltered.

27    Except as otherwise provided above, the foregoing treatment shall be in full satisfaction of

28    the Class 6 Allowed Secured Claim.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    If either Option 1 or 3 is elected by the Debtor or the Plan Agent or the Trustee, then the

2    Debtor or the Plan Agent or the Trustee shall maintain insurance coverage for the property

3    securing the Class 6 Allowed Secured Claim.

4    **7.    Class 7: Secured Claim of PNC Equipment Finance, LLC.**

5    Class 7 consists of the Allowed Secured Claim of PNC Equipment Finance, LLC ("PNC")

6    pursuant to certain written promissory notes secured by security interests in certain personal

7    property.  PNC filed a Proof of Claim asserting a Secured Claim in the amount of $100,000.00

8    and a General Unsecured Claim in the amount of $1,993,483.97.  The Debtor has advised the

9    Committee that it believes the value of property securing the claim of PNC is $100,000.00.

10    The Allowed Secured Claim of PNC is impaired under this Plan.

11    At the option of the ultimate buyer of the Crystal Cathedral Campus, or the Plan Agent or

12    the Trustee, the Class 7 Claim shall be treated as follows:

13    (a)    Option 1:    PNC will receive on account of such Allowed Secured

14    Claim deferred cash payments totaling the allowed amount of such Allowed Secured

15    Claim, equal to the value, as of the Effective Date, of PNC's interest in PNC's collateral.

16    In particular, PNC shall be paid in equal monthly installments, with interest, which shall

17    accrue at the Allowable Interest Rate, commencing on the First Payment Date, fully

18    amortized over a period of 24 months based on the Allowed Secured Claim.  The Allowed

19    Secured Claim may be prepaid at any time without penalty or other charge.

20    Notwithstanding the foregoing, in the event any collateralized equipment is sold by the

21    Plan Agent or the Debtor or the Trustee, the proceeds generated from the disposition of

22    such sale, net of all expenses, shall be paid to PNC, up to the amount of the Allowed

23    Secured Claim, reflecting all payments made to PNC under the terms of this Plan.

24    The allowed Secured Claim shall continue to be secured by PNC's existing Lien

25    on the applicable collateral.  Upon full satisfaction of the Allowed Secured Claim, PNC's

26    Lien on its collateral shall be released and the Debtor or the Plan Agent or the Trustee

27    shall retain title to such collateral free and clear of such Lien.  Any Class 7 Allowed

28    Deficiency Claim shall be treated as an Allowed General Unsecured Claim.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

(b)    Option Two:    The Debtor or the Plan Agent or the Trustee shall return PNC its collateral on the Effective Date in full satisfaction of the Class 7 Allowed Secured Claim.  Any Allowed Deficiency Claim shall be treated as a Class 13 Allowed General Unsecured Claim.

(c)    Option Three:  Notwithstanding any contractual provision or applicable law that entitles PNC to demand or to receive accelerated payment of its Claim after the occurrence of a default: (i) any such default shall be cured, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) the maturity of such Claim shall be reinstated as such maturity existed before such default; (iii) PNC shall be compensated for any damages incurred as a result of any reasonable reliance by PNC on such contractual provision or such applicable law; and (iv) the legal, equitable or contractual rights of PNC shall otherwise be unaltered.

Except as otherwise provided above, the foregoing treatment shall be in full satisfaction of the Class 7 Allowed Secured Claim.

If either Option 1 or 3 is elected by the Debtor or the Plan Agent or the Trustee, then the Debtor or the Plan Agent or the Trustee shall maintain insurance coverage for the property securing the Class 7 Allowed Secured Claim.

**8.    Class 8: Secured Claim of Credit Managers Association ("CMA") in Trust for Creditors.**

Class 8 consists of the Allowed Secured Claim of Credit Managers Association ("CMA"), in trust for certain creditors.  The Claim is secured by certain personal property assets of the Debtor pursuant to a recorded UCC-1.

CMA shall retain its lien on the subject personal property assets, but is barred from pursuing its rights and remedies against such assets until abandonment of same by the Plan Agent or the Trustee.  If the Plan Agent or the Trustee is able to consummate a sale of CMA's collateral within one (1) year of the Effective Date, CMA will receive a distribution to the extent of available Net Sales proceeds from the collateral in accordance with the priorities set forth in the Bankruptcy Code and under applicable California law.  Such distribution shall include accrued

Ringstad & Sanders
— L.L.P. —
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    interest on the Class 8 Allowed Secured Claim at the Allowable Interest Rate.  If neither the Plan

2    nor the Trustee are able to consummate a sale of CMA's collateral within one (1) year of the

3    Effective Date, CMA shall be free to pursue its rights and remedies against its collateral under

4    applicable California law.  CMA's rights are impaired under the Plan.

5           **9.**    **Class 9: Secured Claim of Morgan Stanley Bank, N.A.**

6         Class 9 consists of the Allowed Secured Claim of Morgan Stanley Bank, N.A. ("Morgan

7    Stanley") relating to a loan in the original principal amount of $850,000 which is secured by a

8    first priority security interest in funds held in the Collateral Accounts as defined and described in

9    the Portfolio Loan Account Agreement between the Debtor and Morgan Stanley.  Morgan Stanley

10    filed a Proof of Claim asserting a Secured Claim in the amount of $864,977.78.

11         The Allowed Secured Claim of Morgan Stanley is unimpaired under this Plan, which does

12    not alter the legal, equitable and contractual rights of Morgan Stanley.  On the Effective Date,

13    Morgan Stanley may exercise its rights and remedies against its collateral, in an amount

14    according to proof.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 9 | **Secured claim of:** Morgan Stanley Bank, N.A. | No | No | **Treatment:** The legal, equitable and contractual rights of Morgan Stanley Bank, N.A. are unaltered under this Plan. |
|  | **Collateral description:** The Collateral Accounts as defined in the Portfolio Loan Account Agreement. |  |  | **Retention of Lien:** The Class 9 Claimant will retain its lien with its existing level of priority until the Claim is paid in full. |
|  | **Collateral value:** Unknown |  |  |  |
|  | **Priority of security interest:** First. |  |  |  |
|  | **Total claim amount:** $864,977.78 per Proof of Claim filed by Morgan Stanley Bank, N.A. |  |  |  |

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1      **10.**    **Class 10:  Secured Claim of Toyota Motor Credit Corp.**

2      Class 10 consists of the Allowed Secured Claim of Toyota Motor Credit Corp. ("Toyota")

3  pursuant to a certain written Master Lease Agreement relating to the lease of a 2006 Isuzu truck.

4  Toyota filed a proof of claim asserting a secured claim in the amount of $15,644.94.

5      The Allowed Secured Claim of Toyota is impaired under this Plan.

6      On the Effective Date, an election will be made as to whether the Master Lease

7  Agreement will be assumed and any pre-petition default cured.  After the Effective Date, the

8  Reorganized Debtor will continue to pay the payments under the terms of the Master Lease

9  Agreement through the term of same.

10      In the alternative, the Plan Agent or the Trustee may elect to surrender to Toyota on the

11  Effective Date the collateral securing the Class 10 Allowed Secured Claim in full satisfaction of

12  such Claim.   Any Allowed Deficiency Claim will be treated as a Class 13 Allowed General

13  Unsecured Claim.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Ringstad & Sanders
LLP — LLP.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 10 | **Secured claim of:** Toyota Motor Credit Corp.<br><br>**Collateral description:** 2006 Isuzu truck<br><br>**Collateral value:** Unknown<br><br>**Priority of security interest:** First.<br><br>**Total claim amount:** $15,644.94 per proof of claim filed by Toyota Motor Credit Corp. | No | No | **Treatment:** On the Effective Date, either the Plan Agent or the Debtor will assume the Master Lease Agreement and cure any pre-petition default. After the Effective Date, the Reorganized Debtor will continue to pay the payments under the terms of the Master Lease Agreement through the term of same.<br>In the alternative, the Plan Agent or Trustee may elect to surrender to Toyota on the Effective Date the collateral securing the Class 10 Allowed Secured Claim in full satisfaction of such Claim. Any Allowed Deficiency Claim shall be treated as a Class 13 Allowed General Unsecured Claim.<br><br>**Retention of Lien:** The Class 10 Claimant will retain its lien with its existing level of priority until its Allowed Secured Claim is paid in full or the subject collateral surrendered. |

**Other Classes of Claims.**

   **11.    Class 11:  Claims of Holders of Vested Interests in Memorial Gardens.**

          Class 11 consists of the Allowed Claims of Holders of Vested Interests in the Debtor's

Memorial Gardens.  Pre-petition the Debtor marketed and sold burial plots and/or "niches" to the

general public.  Each purchaser of such an interest has an exclusive right to use such interest

pursuant to applicable California law, including but not limited to Cal. Health & Safety Code

Sections 8555 and 8558.

          The holders of such Vested Interests shall retain their rights as against the Debtor, the

Crystal Cathedral Campus, including the Memorial Gardens, and as against any purchaser of the

Crystal Cathedral Campus as may be provided by the terms of this Plan.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1   The Allowed Claims of Holders of Vested Interests in the Debtor's Memorial Gardens are

2   unimpaired under this Plan.

3   **12.    Class 12: Priority Unsecured Claims.**

4   Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7)

5   are required to be placed in classes. These types of claims are entitled to priority treatment as

6   follows: the Code requires that each holder of such a claim receive cash on the Effective Date

7   equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders

8   may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the

9   allowed amount of such claims.  Absent an agreement providing otherwise, the Allowed Class 12

10  Claims will be paid in full on the Effective Date.

11  The holders of allowed Class 12 Priority Unsecured Claims are unimpaired under this

12  Plan.

13  **13.    Class 13:  Class of General Unsecured Claims.**

14  Class 13 consists of all Allowed General Unsecured Claims not entitled to priority under

15  Code Section 507(a).

16  Allowed Class 13 Claims will be paid in full from the net proceeds of the sale of the

17  Debtor's Real and Personal Property Assets, Cash on hand on the Effective Date, and, if

18  necessary, post-confirmation revenues of the Debtor, as follows:

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 13 | General Unsecured Claims<br><br>Total amt of claims = Estimated by the Debtor to be approximately $12,500,000.00, exclusive of Claims of Insiders and Endowment Fund Claimants. | Yes. | **Treatment:** Allowed General Unsecured Claims shall be paid all or a portion of the following as necessary to satisfy such claims in full:<br><br>(a) 100% of the Net Sale Proceeds from the sale of the Crystal Cathedral Campus after the Allowed Secured Claim of F&M is paid in full, or following reserve for the maximum Secured Claim asserted by F&M in the event a dispute arises regarding the amount of F&M's Secured Claim;<br><br>(b) 100% of the Net Sale Proceeds from the sale of the Condominium after the Allowed Secured Claim of G&B is paid in full;<br><br>(c) 100% of the Net Sale Proceeds from the sale of the Debtor's Personal Property Assets after the Allowed Secured Claim of CMA is paid in full;<br><br>(d) 100% of the Debtor's cash on hand on the Effective Date; and,<br><br>(e) 100% of any post Confirmation revenues generated by the Debtor until such time as the Class 13 Claimants are paid in full.<br><br>General Unsecured Creditors shall be entitled to interest on their Allowed Claims, at the Allowable Interest Rate, from the date of Confirmation to the day of payment in full of such Claim.<br><br>**See, Means of Performing the Plan Section of this Plan for further details regarding timing of payments to Class 13 Creditors.** |

Ringstad & Sanders
_____ L.L.P., 17th Floor
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

14.    **Class 14:  Claims of Insiders.**

After Allowed Administrative Claims, Allowed Secured Claims, Allowed Priority Claims,

Allowed Interest Holder Claims and Allowed General Unsecured Claims are paid in full, the

Holders of Claims of Insiders will receive their Pro-Rata share of payments until their Claims are

paid in full provided that such payments will not result in a negative monthly ending cash balance

and the Debtor is able to maintain a calendar year-end cash balance of at least $1,000,000.  Such

distribution shall not include any accrued interest on such Allowed Claims.  The Debtor estimates

claims in this Class total approximately $2,029,259.00.

In the event that any Class 14 Creditor votes to reject this Plan, the Committee will

proceed to file formal objections to the Insider Claims on the basis that such individuals did not

provide any value to the Estate which would otherwise give rise to valid Claims, and will further

commence the necessary actions to recover what it believes are preferential payments made to

such Insiders within the two-year period prior to the Petition Date, including but not limited to an

action against the Robert Harold Pension Trust for distributions received in or about May 2010

from the sale of the Debtor's interest in certain real property located in San Juan Capistrano,

California.  Pending the determination of such formal objections, the Plan Agent or Trustee will

reserve on a pro-rata basis in the Disputed Claims Reserve funds equal to any distribution such

Insiders would be entitled to receive as Class 13 Claimants.  No distributions will be received by

the Insider Claimants until such time as objections to their respective Claims are resolved by

order of the Court, and resolution of any preferential or fraudulent conveyance actions

commenced against such Insider(s).

15.    **Class 15:  Endowment Fund.**

The Debtor scheduled a pre-petition Claim in favor of what it refers to as the "Endowment

Fund".  The Committee has researched the basis for this alleged Claim and has determined that

the Endowment Fund is not a separate legal entity but rather an unrestricted bank account

established by the Debtor for the purpose of holding certain donations received from members of

its congregation and third parties.  The Committee further believes that based upon applicable

California law, the parties who donated the funds deposited into the Endowment Account have no

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    identifiable claims against the Debtor, the Estate or the Endowment Fund. In an abundance of

2    caution, however, the Debtor and the Committee, in cooperation with the Office of the United

3    States Trustee, agreed that the Debtor would provide a notice of claims bar date to all parties who

4    donated funds deposited into the Endowment Account. The Claims Bar Date established pursuant

5    to such notice is September 12, 2011. Prior to the Confirmation Hearing, the Committee will file

6    appropriate claims objections to the Class 15 Claims so that the interests of such Claimants can be

7    determined. Pending the determination of such formal objections, the Plan Agent or Trustee will

8    reserve on a pro-rata basis in the Disputed Claims Reserve funds equal to any distribution such

9    Class 15 Claimants would be entitled to receive as Class 13 Claimants. No distributions will be

10    received by the Class 15 Claimants until such time as objections to their respective Claims are

11    resolved by order of the Court.

12                                              IV.

13                          **MEANS FOR IMPLEMENTING THE PLAN**

14    A.    **Means of Performing the Plan.**

15            This article is intended to explain the means by which the Committee intends to effectuate

16    the distributions to creditors provided for under this Plan. This article provides information

17    regarding prospective corporate governance of the Debtor, if any, funding sources for Plan

18    obligations, and other material issues bearing upon the performance of the Plan.

19            1.    **Funding for the Plan.**

20            The proposed payments to creditors and interest holders contemplated by the Plan shall be

21    collectively referred to herein as the "Plan Obligations".

22            The Plan will be funded from the following primary sources: (1) approximately $50

23    million in gross proceeds from the sale of substantially all of the Debtor's Real Estate Assets; (2)

24    approximately $4.1 million from a combination of Cash on the Effective Date and (3), to the

25    extent necessary, cash flow from the Debtor's continued operation of its ministry and

26    approximately $750,000.00 from the sale of the Personal Property Assets.

27            With regard to the sale of the Crystal Cathedral Campus, the Committee and the Debtor

28    have received written offers to purchase this Estate asset from the following parties:

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Chapman University ("CU") - $50 million purchase price[4], with real estate leaseback and

2    repurchase options for the Debtor, as set forth in the Letters of Intent dated July 22, 2011 and

3    August 4, 2011, and the Proposed Leaseback and Option to Repurchase Schedule, which are

4    attached collectively as Exhibit "4" to the Disclosure Statement.

5        The Roman Catholic Bishop of Orange, a California corporation sole ("RCBO") – a

6    purchase price of $53,600,000 (including a $3,600,000 rent reserve in the event the Debtor elects

7    to accept leaseback options), as set forth in the Executive Summary of CCM Purchase and Sale

8    Agreement attached as Exhibit "5" to the Disclosure Statement.

9        The Committee is informed and believes that Hobby Lobby has submitted a purchase

10   proposal to the Debtor, designating a purchase price of $47,500,000. The Committee has not

11   been provided a copy of this purchase proposal but has communicated with counsel for this

12   prospective buyer.

13       A written purchase proposal has been filed by My Father's House International ("MFHI"),

14   purporting to offer $50 million for the Crystal Cathedral Campus. A true and correct copy of the

15   MFHI Offer and Letter of Intent is attached as Exhibit "6" to the Disclosure Statement. This

16   proposal contemplates payments to Creditors over an extended period of time and is believed by

17   the Committee to be inferior to the other offers referenced above.

18       The Committee is informed and believes that at least one additional third party may be in

19   the process of formulating a purchase proposal for the Crystal Cathedral Campus.

20   **Option A :**

21       If the Debtor elects to cooperate with the Committee in its efforts to maximize the value

22   of the Estate's assets for the benefit of Creditors, the Crystal Cathedral Campus will be sold for a

23   purchase price of not less than $50 million. The Debtor will determine which of the pending

24   purchase proposals shall be presented to the Court at the Confirmation Hearing (subject to pre-

25   approval by the Committee, in writing), based upon purchase price, leaseback and repurchase

26   options offered.   The proposed sale will be consummated on or before the Effective Date.

---

27   [4] The purchase price is subject to reduction in the event the Secured Claim of F&M is reduced,
28   either consensually or by Court order. See Exhibit "5" to the Disclosure Statement for further
     details.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
LLP.
2030 Main Street, 14th Floor
Irvine, California 92614
949.851.7450

1   If the Debtor selects the $50 million CU purchase proposal, the Debtor will leaseback

2   what are referred to as the Ministry Buildings[5] at the rate of $150,000 per month triple net, with

3   3% annual increases, for a 15 year term.  CU will further lease back to the Debtor the basement

4   and floors 1 and 2 of what is referred to as the Family Life Building at the rate of $65,000 per

5   month triple net, with no annual increases, for a 2 year term.  The Debtor operates its Christian

6   school facility from these portions of the Family Life Building.

7   CU will further grant to the Debtor the right to repurchase the Ministry Buildings for the

8   price of $27,500,000.

9   Chapman University will utilize the Crystal Cathedral Campus as a satellite campus, a use

10  compatible with the Debtor's current use of the premises, and future operations should the Debtor

11  elect to support this Plan.

12  The above terms are general and subject to revision and documentation at or prior to the

13  Confirmation Hearing, but in no event will the CU proposal provide for a purchase price less than

14  $50 million.

15  If the Debtor selects the $53,600,000 RCBO purchase proposal, the Debtor can elect

16  whether or not to leaseback certain portions of the Crystal Cathedral Campus.  If no leaseback

17  occurs, the Debtor will receive the entire $53,600,000, less closing costs.  If a leaseback on the

18  terms below is elected by the Debtor, up to $3,600,000 of the proposed purchase price will be

19  utilized by RCBO as a rent reserve to ensure the Debtor timely tenders all required lease

20  payments.  If the Debtor vacates the Crystal Cathedral Campus prior to the end of the second

21  lease year, the Debtor will receive any funds remaining in the rent reserve.

22  If the Debtor elects to leaseback certain portions of the Crystal Cathedral Campus, RCBO

23  will lease back to the Debtor the Ministry Buildings, including the Welcoming Center but

24  excluding the Memorial Gardens, at the rate of $150,000 per month triple net, with 3% annual

25  increases, for a 3 year term.  RCBO will further lease back to the Debtor the basement and floors

26  1 and 2 of what is referred to as the Family Life Building at the rate of $10,000 per month triple

27  net, for a period of 6 months.

28  [5] Ministry Buildings to include the Crystal Cathedral Church, Tower of Hope, Arboretum, Family
Lounge, Art Gallery, Spire and Prayer Chapel and the Memorial Gardens.

1    RCBO will utilize the Crystal Cathedral Campus as a new home for its congregation,

2    requiring the Debtor to completely vacate the premises within 3 years of the Effective Date.

3    The above terms are general and subject to revision and documentation at or prior to the

4    Confirmation Hearing, but in no event will the RCBO proposal provide for a purchase price less

5    than $50,000,000.

6    Attached as Exhibit "7" to the Disclosure Statement is a comparison of the current CU and

7    RCBO offers, with and without leaseback options.

8    With the consent of the Committee, the Debtor may determine that an alternate purchase

9    proposal is in the best interests of the Debtor and the Creditors, resulting in the Committee

10    presenting an alternate sale transaction to the Court for approval at the time of the Confirmation

11    Hearing.  Any such alternate sale transaction will provide for a purchase price of not less than $50

12    million and provide the means by which General Unsecured Claims shall be paid in full pursuant

13    to the terms of the Plan.

14    **Option B:**

15    In the event the Debtor elects to oppose this Plan, the Committee, through the Plan Agent

16    or the Trustee, will proceed at the Confirmation Hearing to consummate a sale transaction with a

17    buyer that may not include the lease back provisions or repurchase option referenced in Option A

18    above.

19    **Not less than fifteen (15) days prior to the Confirmation Hearing, the Committee will**

20    **designate the purchaser/sale proposal selected by the Committee, under either Option A or**

21    **Option B.**

22    **Provisions Applicable to Option A or Option B:**

23    As set forth in the Liquidation Analysis attached hereto as Exhibit "A", the Feasibility

24    Analysis/Key Assumptions attached hereto as Exhibit "B", and the Financial Projections attached

25    hereto as Exhibit "C", estimated cash on hand with the Debtor at the Effective Date, coupled with

26    proceeds from the sale and disposition of the Debtor's remaining Real and Personal Property

27    Assets, will provide funds to satisfy the Plan Obligations described in this Plan.

28

Ringstad & Sanders
— L.L.P. —
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

1        The Committee may seek the appointment of a Trustee prior to Confirmation for the

2  purpose of fulfilling the Debtor's fiduciary obligations to creditors under the Bankruptcy Code.

3  In addition, or in the alternative, at least 21 days before the Plan Confirmation hearing, the

4  Committee will file with the Court a proposed nomination of an individual to serve as the Plan

5  Agent pursuant to the terms of this Plan. The Plan Agent or Trustee will be responsible for

6  carrying out the terms of this Plan. The compensation of the Plan Agent or Trustee will be

7  subject to the approval of the Bankruptcy Court upon noticed application for approval of the

8  requested compensation of the Plan Agent or Trustee, and will not, in any event, exceed the

9  maximum compensation that would be payable to a trustee pursuant to 11 U.S.C. § 326. Legal

10  representation of the Plan Agent or Trustee will be provided by Ringstad & Sanders, LP, the law

11  firm presently representing the Committee. The Committee will be disbanded on the Effective

12  Date and Ringstad & Sanders, LP will provide legal services to the Plan Agent or Trustee in

13  his/her efforts to ensure that the goals of this Plan are fully achieved. Ringstad & Sanders will be

14  entitled to receive payment on an ongoing basis for their services from the funds in the possession

15  of the Plan Agent or Trustee. Prior to entry of a final decree, the Plan Agent or Trustee and

16  Ringstad & Sanders shall file fee applications and obtain court approval of their fees and

17  expenses and shall disgorge any funds not awarded.

18      **2.**    **Sale of Real Property Assets of the Estate.**

19        The Plan Agent or Trustee shall be responsible for the consummation of the sale of the

20  Crystal Cathedral Campus and the Laguna Beach Condominium (collectively the "Real

21  Property"). The Plan Agent or Trustee may engage a real estate agent to assist in the marketing

22  and sale of the Laguna Beach Condominium. The Plan Agent or Trustee shall be vested with the

23  authority to negotiate and sign all necessary documents to complete the sale of the Real Property,

24  including but not limited to Listing Agreements, Offers for Purchase and Sale, Agreements for

25  Purchase and Sale, Escrow Instructions and Grant Deeds. At the discretion of the Plan Agent or

26  the Trustee, Real Property may be sold in private sale or by auction. The Plan Agent or Trustee

27  will use their best efforts to complete the sale of the Real Property within six months following

28  the Effective Date. All Secured Creditors with an interest in Real Property sold under the Plan

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  will be paid in full from the proceeds of sale upon the close of escrow as otherwise provided by

2  the terms of the Plan.

3      **3.    Sale of Personal Property.**

4      Concurrently with the sale of all Real Property, the Plan Agent or Trustee shall commence

5  liquidation of the Personal Property assets of the estate and may sell such Personal Property assets

6  as are determined to be necessary, in the sole discretion of the Plan Agent or Trustee, to enable

7  payment in full of the Plan Obligations.  The order or manner of liquidation of the Personal

8  Property, including the choice of which items to liquidate shall be in the sole discretion of the

9  Plan Agent or Trustee.  No Court approval shall be required prior to sale of any item.  The Plan

10  Agent or Trustee shall be invested with authority to employ any persons that the Plan Agent or

11  Trustee believes are reasonable necessary to compete such sales, including but not limited to

12  Personal Property sales agents and/or auctioneers, and to compensate such persons from such

13  sales in the Plan Agent's or Trustee's discretion.  The Plan Agent or Trustee shall further be

14  vested with the authority to execute all documents necessary to accomplish such sales, including

15  contracts of sale and bills of sale.

16      With regard to Real and Personal Property Asset sales, the Plan Agent or the Trustee shall

17  marshal such Assets such that only those Assets as are necessary to fund the Plan Obligations are

18  sold.

19      **4.    Use of Real and Personal Property Prior to Sale.**

20      The Debtor may continue its operations after Confirmation of the Plan so long as the

21  Debtor complies with all provisions of the Plan.  The Debtor may continue its use and occupancy

22  of the Crystal Cathedral Campus and use of the Personal Property owned by the Debtor until

23  written request by the Plan Agent or Trustee to vacate and turnover possession of Real Property,

24  or to turnover possession of Personal Property, including any Cash on hand at Confirmation.

25  Upon receipt of such written request, the Debtor must vacate the Real Property as to which the

26  request was made and turnover possession to the Plan Agent or Trustee, or turnover possession of

27  the Personal Property as to which demand was made, within 10 days following the request.  If the

28  Debtor fails to timely vacate such parcel or turnover such Personal Property, the Plan Agent or

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1   Trustee may seek an Order for Possession from the Bankruptcy Court by way of emergency

2   motion. The only issues at such hearing will be (i) whether the written request was provided; (ii)

3   whether 10 days have elapsed since the written request was received by the Debtor; and (iii)

4   whether the Debtor has turned over the subject Real Property or Personal Property. If the Court

5   finds by a preponderance of the evidence that the written request was provided, 10 days have

6   elapsed since the written request was provided, and the Debtor has failed turnover the Real

7   Property or Personal Property as to which the request was made, then the Court shall issue an

8   immediate Order for Possession granting to the Plan Agent or Trustee the immediate possession

9   of the subject Real Property or Personal Property.

10        The Debtor's ability to continue use of the Real Property and the Personal Property

11   following confirmation of the Plan is subject to: (i) the continued maintenance of the Real

12   Property and the Personal Property by the Debtor; (ii) compliance by the Debtor with all

13   restrictions on use of the Real Property and/or the Personal Property in accordance with any

14   written requests made by the Plan Agent or Trustee; (iii) payment of all utility costs arising from

15   the use of the Real Property; (iv) maintenance of Real Property and Personal Property insurance

16   policies and a liability policy, as to which the Plan Agent or Trustee will be a named insured, in

17   amounts and with terms acceptable to the Plan Agent in his/her sole discretion.

18      **5.**    **Post-Confirmation Disbursements.**

19        Each Allowed Secured Claim encumbering a Real Property shall be paid in full at the

20   close of escrow for the sale of such Real Property. The Plan Agent or Trustee may make a pro

21   rata distribution to General Unsecured Creditors (Allowed Class 13, 14 and 15 Claimants) upon

22   close of the sale of the Crystal Cathedral Campus. The date of such distribution shall be referred

23   to herein as the First Distribution Date. The Plan Agent or Trustee shall make a second pro rata

24   distribution to General Unsecured Creditors upon close of sale of the Condominium, or

25   liquidation of the Personal Property Assets, in the discretion of the Plan Agent or Trustee. The

26   date of such distributions shall be referred to herein as the Additional Distribution Dates.

27

28

Ringstad & Sanders
LLP.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    **6.    Post-Confirmation Abandonment Following Payment in Full of All Plan**

2    **Obligations.**

3    Upon payment in full of all Plan Obligations, approval by the Court of the Plan Agent's or

4    Trustee's Final Report and Account and entry of Final Decree, the Plan Agent or Trustee shall

5    disburse any remaining funds to the Debtor, and all remaining assets of this Bankruptcy Estate

6    shall be deemed abandoned to the Debtor.

7    **7.    Post Confirmation Committee.**

8    Until such time as the Plan Obligations are paid in full, the Committee shall continue to

9    exist after the Confirmation Date so long as it is comprised of at least 3 members (the "Post-

10   Confirmation Committee"). The Post-Confirmation Committee's duties will include: (1)

11   consulting with the Reorganized Debtor, the Plan Agent or Trustee, with regard to consummation

12   of the Plan; (2) until such time as all payments to Class 13 Claimants are made in full,

13   investigating the financial condition of the Reorganized Debtor, the operation of the Reorganized

14   Debtor's business and other matters relevant to consummation of the Plan; and (3) enforcing,

15   filing, litigating, prosecuting, settling and collecting (on behalf of the Estate) the Estate Claims.

16   Notwithstanding the rights of the Post-Confirmation Committee, nothing in this Plan shall require

17   the Post-Confirmation Committee to prosecute or litigate any such matters, all of which may be

18   determined by the Post-Confirmation Committee in the exercise of its sole and absolute

19   discretion. The Post-Confirmation Committee will be entitled to retain counsel and its reasonable

20   fees and expenses will be paid from the Net Sale Proceeds or the Reorganized Debtor.  Pursuant

21   to Section 327(e) of the Code, employment of a professional by a trustee and a creditor is

22   permissible.

23   **8.    Compliance with California State Law Governing the Transfer of Property**

24   **by a Nonprofit Corporation.**

25   The Debtor, the Plan Agent or any Trustee appointed by the Court will comply with

26   applicable California state law governing the transfer of property by a nonprofit corporation.

27   Post-confirmation, the Debtor will continue to be managed by management of its choosing.

28   Neither the Plan Agent nor the Trustee will not be responsible for any post-Confirmation

1  management or operations of the Debtor.

2

3       As of the Effective Date, the Plan Agent or the Trustee may use, acquire, and dispose of

4  property and settle and compromise Claims without the supervision of, or any authorization from,

5  the Bankruptcy Court or the United States Trustee, and free of any restriction of the Bankruptcy

6  Code or Bankruptcy Rules, other than those restrictions specifically provided for in the Plan or

7  the Confirmation Order.

8       As of the Effective Date, the Reorganized Debtor may operate its ministry, subject to the

9  terms and provisions of the Plan or the Confirmation Order.

10      Any Net Sales Proceeds or other liquidation proceeds available after satisfaction of all

11  Plan Obligations will be abandoned to the Debtor.

12                                    **V.**

13              **TREATMENT OF MISCELLANEOUS ITEMS**

14  A.    <u>Avoidance Actions</u>.

15      **THE COMMITTEE HAS NOT DETERMINED WHETHER ANY ESTATE**

16  **CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION, WHETHER THERE ARE**

17  **ANY AVOIDANCE ACTIONS THAT MAY BE FILED BY THE POST-**

18  **CONFIRMATION COMMITTEE AFTER THE CONFIRMATION DATE. THIS**

19  **INVESTIGATION IS ONGOING AND WILL OCCUR, IN LARGE PART, AFTER THE**

20  **CONFIRMATION DATE. AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY**

21  **ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY**

22  **PARTICULAR AVOIDANCE ACTION OR OTHER ESTATE CLAIM MAY NOT BE**

23  **LISTED, DISCLOSED OR SET FORTH IN THE PLAN, AN AVOIDANCE ACTION OR**

24  **OTHER ESTATE CLAIM MAY BE FILED AGAINST ANY CREDITOR OR OTHER**

25  **PARTY AT ANY TIME.**

26      Notwithstanding anything to the contrary herein, one hundred percent (100%) of any Net

27  Proceeds recovered, either before or after the Effective Date, from prosecution or settlement of

28  Avoidance Action claims shall be paid in the following Order:  (i) first, to satisfy any unpaid

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

professional fees incurred in prosecuting the Avoidance Action(s); (ii) second, to Creditors

holding Allowed Administrative Claims and Allowed Cure Claims, based on the pro rata share of

such Claims, up to an amount that, in conjunction with other payments made to these Creditors

under the Plan, renders such Creditors Paid in Full; (iii) third, to Creditors holding Allowed

Priority Tax Claims, up to an amount that, in conjunction with other payments made to these

Creditors under the Plan, renders such Creditors Paid in Full; (iv) fourth, to Creditors holding

Allowed General Unsecured Claims, up to an amount that, in conjunction with other payments

made to these Creditors under the Plan, renders such Creditors Paid in Full; and (v) fifth, to

Creditors holding Allowed Subordinated Insider Claims, up to an amount, that in connection with

other payments made to these Creditors under the Plan, renders such Creditors Paid in Full.

Within three Business Days after the Plan Agent or Trustee receives any such Net Proceeds, the

Plan Agent or Trustee shall deposit such proceeds into the Net Sales Proceeds Account for the

benefit of the foregoing from which no disbursements shall be made except for the purpose of

funding Distributions hereunder to the foregoing Creditors. The Plan Agent or Trustee shall use

the funds held in this account to make distributions pursuant to the terms of the Plan. Allowed

Claims of the foregoing Creditors shall be credited by the amount of Net Proceeds paid to

Creditors of such Claims.

  **B.**  **Disposition of Assets.**  From and after the Effective Date, the Plan Agent or

Trustee shall be entitled to sell, transfer, encumber or otherwise dispose of any interest in any of

the Estate's assets, without any need for notice to Creditors or approval of the Bankruptcy Court.

  **C.**  **Compromise of Controversies.**  From and after the Effective Date, the Plan

Agent, Trustee and the Post-Confirmation Committee shall be entitled to compromise any

objections to Disputed Claims, or any controversies relating to Post-Confirmation Estate Claims,

Avoidance Actions or other litigation pending after the Confirmation Date without the need for

notice to Creditors or approval of the Bankruptcy Court.

  **D.**  **Bankruptcy Court Approval Relative to Post-Confirmation Matters.**  Nothing

contained in the Plan shall be deemed to impair in any manner the right of the Plan Agent,

Trustee, Reorganized Debtor, the Post-Confirmation Committee or any party-in-interest to seek at

Ringstad & Sanders
LLP
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

1   any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken

2   consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

3         **E.**    **Right of Setoff.**  Pursuant to Section 553 of the Bankruptcy Code or applicable

4   non-bankruptcy law, the Plan Agent, Trustee or Reorganized Debtor may set off against any

5   Allowed Claim and Distribution to be made pursuant to the Plan on account of such Allowed

6   Claim (before any Distribution is made on account of such Allowed Claim), any account stated,

7   claim, right, or cause of action which the Debtor or the Estate may possess against the holder of

8   such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the

9   allowance of any Claim shall constitute a waiver or release by the Debtor or the Estate of any

10   such account, claim, right, and cause of action that the Debtor or the Estate may possess against

11   the holder of such Allowed Claim.  To the extent that the Plan Agent, Trustee or Reorganized

12   Debtor in allowing a Claim fails to effect a setoff with a Creditor and seeks to collect a claim

13   from such Creditor after a Distribution to such Creditor pursuant to the Plan, the Debtor or Estate

14   shall be entitled to full recovery on its claim against such Creditor, notwithstanding any payment

15   of the Creditor's Allowed Claim pursuant to the Plan.

16         In accordance with the provisions of Section 553 of the Bankruptcy Code, the Internal

17   Revenue Service shall be entitled to set off against any amounts that the Internal Revenue Service

18   may owe to the Estate on account of overpayments by the Debtor of pre-confirmation taxes any

19   pre-confirmation tax liabilities that the Debtor may owe to the Internal Revenue Service.

20         **F.**    **Cash Payments.**  Cash payments made pursuant to the Plan shall be in United

21   States dollars by checks drawn on a domestic bank selected by the Plan Agent or Trustee or by

22   wire transfer from a domestic bank, at the option of the Plan Agent or Trustee.

**VI.**

**DISTRIBUTIONS**

25         **A.**    **Distributions.**

26         **1.**    **Dates of Distributions.**  Any Distribution required to be made on the Effective

27   Date shall be deemed timely if made as soon as practicable after such date and, in any event,

28   within fifteen (15) days after such date.  Any Distribution required to be made upon a Disputed

Ringstad & Sanders
— L.L.P. —
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1  Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely

2  if made as soon as practicable thereafter but, in any event, within fifteen (15) days thereafter.

3       **2.**     **Limitation on Liability.** Neither the Plan Agent, Trustee, the Reorganized

4  Debtor, its respective affiliates, the Committee, nor any of its respective employees, members,

5  officers, directors, agents, or Professionals shall be liable for (i) any acts or omissions (except for

6  willful misconduct) in connection with implementing the Distribution provisions of the Plan and

7  the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of

8  Distributions made pursuant to the Plan resulting from any delays in making such Distributions in

9  accordance with the terms of the Plan (including, but not limited to, any delays caused by the

10  resolution of Disputed Claims).

11       **B.**     **Instruments.**

12       **1.**     **Rights of Persons Holding Instruments.** Except as otherwise provided herein, as

13  of the Effective Date, and whether or not surrendered by the holder thereof, all Instruments

14  evidencing or relating to any Claims shall be deemed automatically cancelled and deemed void

15  and of no further force or effect, without any further action on the part of any person, and any

16  Claims evidenced by or relating to such Instruments shall be deemed discharged.

17       **2.**     **Cancellation of Liens.** Except as otherwise provided herein, any Lien securing

18  any Secured Claim shall be deemed released and discharged, and the Creditor holding such

19  Secured Claim shall be authorized and directed to release any collateral or other property of the

20  Debtor (including, without limitation, any cash collateral) held by such Creditor and to take such

21  actions as may be reasonably requested by the Plan Agent or Trustee to evidence the release of

22  such Lien, including, without limitation, by the execution, delivery and filing or recording of such

23  releases as may be requested by the Plan Agent or Trustee.

24       **C.**     **De Minimis Distributions.** The Plan Agent or Trustee is not required to make

25  any Cash distribution of less than $10.00, but may do so in the sole discretion of the Plan Agent

26  or Trustee. Whenever payment of a fraction of a cent would otherwise be called for, the actual

27  payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or

28  other property that is not distributed as a consequence of this section shall, after the last

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Distribution on account of Allowed Claims in the applicable Class, be treated as Unclaimed

2    Property under the Plan.

3          **D.**    **Delivery of Distributions.** Except as provided in the Plan with respect to

4    Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative

5    Claims shall be distributed by mail as follows:  (i) with respect to each holder of an Allowed

6    Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of

7    Claim; (ii) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at

8    the address reflected on the Schedules filed by the Debtor; provided, however, that, if the Plan

9    Agent or Trustee have received a written notice of a change of address for such Creditor, the

10   address set forth in such notice shall be used; or (iii) with respect to each holder of an Allowed

11   Administrative Claim, at such address as the holder thereof may specify in writing.

12         **E.**    **Undeliverable Distributions.** No further distribution of Unclaimed Property shall

13   be made to a Creditor unless and until the Plan Agent or Trustee are notified in writing of such

14   Creditor's then current address.  Subject to the provisions of Section F hereof, Unclaimed

15   Property shall remain in the possession of the Plan Agent or Trustee pursuant to Section F, and

16   shall be set aside and held in the Unclaimed Property Reserve to be maintained by the

17   Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing

18   contained in the Plan shall require the Plan Agent or Trustee or any other person to attempt to

19   locate such Creditor.

20         **F.**    **Disposition of Unclaimed Property.** If the Creditor entitled to a Distribution of

21   Unclaimed Property notifies the Plan Agent or Trustee of such Creditor's claim to the

22   Distribution of such Unclaimed Property within nine (9) months following the Initial Distribution

23   Date, the Unclaimed Property distributable to such Creditor shall be released from the Unclaimed

24   Property Reserve and paid to such Creditor within fifteen (15) days thereof.  Any Holder of an

25   Allowed Claim or Allowed Administrative Claim that does not assert a claim in writing for

26   Unclaimed Property held by the Plan Agent or Trustee within nine (9) months following the

27   Initial Distribution Date shall no longer have any claim to or interest in such Unclaimed Property,

28   and shall be forever barred from receiving any Distributions under the Plan or otherwise from the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Reorganized Debtor.  In such cases, any such Unclaimed Property shall be retained by the Plan

2    Agent or Trustee, shall not be subject to the unclaimed property or escheat laws of any state or

3    other governmental unit, and shall be distributed on account of Allowed General Unsecured

4    Claims at the time when the succeeding Distribution is to be paid to General Unsecured Creditors

5    pursuant to the Plan, or abandoned to the Reorganized Debtor if all Plan Obligations have been

6    been paid in full.

## VII.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

9        **A.**    **Objections to Claims**.  The Plan Agent, the Trustee, the Reorganized Debtor and

10    the Post-Confirmation Committee shall have the right to file objections to Claims.  Unless another

11    date is established by order of the Bankruptcy Court, any objection to a Claim shall be filed with

12    the Bankruptcy Court and served on the Reorganized Debtor or the Post-Confirmation Committee

13    as the case may be, and the Creditor holding such Claim on or before the applicable Claims

14    Objection Deadline.  The Plan Agent, the Trustee, the Reorganized Debtor and the Post-

15    Confirmation Committee shall have the right to request that the Bankruptcy Court extend the

16    Claims Objection Deadline.

17        Notwithstanding the fact that the Plan Agent, the Trustee, the Reorganized Debtor and the

18    Post-Confirmation Committee shall have the right to file, litigate, and settle objections to

19    Disputed Claims on behalf of the Debtor and Estate, nothing contained herein shall be deemed to

20    obligate such parties to take any such actions, all of which shall be determined by the parties in

21    their sole and absolute discretion.  No settlement of any objection to a Claim may be made

22    without the express written consent of the Post Confirmation Committee and the Plan Agent or

23    Trustee.  If the Post Confirmation Committee or the Plan Agent object to a proposed settlement of

24    an objection to a Claim, then the objecting party may request approval of the Court to substitute

25    in as the objecting party.

26        **THE COMMITTEE HAS NOT FULLY REVIEWED THE CLAIMS IN THE CASE**

27    **OR DETERMINED WHETHER OBJECTIONS TO CLAIMS EXIST.  THIS**

28    **INVESTIGATION IS ONGOING AND MAY OCCUR, IN LARGE PART, AFTER THE**

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1   CONFIRMATION DATE. AS A RESULT, CREDITORS AND OTHER PARTIES-IN-

2   INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THAT THE

3   EXISTENCE OF ANY PARTICULAR OBJECTION TO A DISPUTED CLAIM MAY

4   NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN, AN OBJECTION TO A

5   CLAIM MAY BE FILED AGAINST ANY CREDITOR OR PARTY-IN-INTEREST AT

6   ANY TIME, SUBJECT TO THE CLAIMS OBJECTION DEADLINE. THE

7   COMMITTEE HEREBY RESERVES THE RIGHT TO OBJECT TO AMOUNTS THAT

8   HAVE BEEN SCHEDULED BY THE DEBTOR, OR REFLECTED IN THE DEBTOR'S

9   BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN

10   ANY RESPECT.

11       **B.**   **Treatment of Disputed Claims**.

12       **1.**   **No Distribution Pending Allowance**. If any portion of a Claim is a Disputed

13   Claim, no Distribution provided for under the Plan shall be made on account of such Claim unless

14   and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

15       **2.**   **Distribution After Allowance**. Within thirty (30) days following the date on

16   which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the

17   Distribution Agent shall distribute to the Creditor holding such Allowed Claim any Cash that

18   would have been distributable to such Creditor if, at the time of the making of any Distribution to

19   the Class of which such Creditor is a member, such Claim had been an Allowed Claim and not a

20   Disputed Claim.

21       **3.**   **Reserves for Disputed Claims**. In the event that a Disputed Claim is pending as

22   to a Class 13, 14 or 15 Creditor, the Distribution Agent shall establish a Disputed Claims

23   Reserve, and maintain a reasonable reserve necessary to pay such Disputed Claim. No

24   disbursement of funds from the Disputed Claims Reserve shall be made on account of a Disputed

25   Claim until such Disputed Claim has been determined by a Final Order of the Bankruptcy Court.

26   In the event that any Disputed Claim is ultimately disallowed by the Bankruptcy Court, the

27   amount reserved for such Disputed Claim, which has been disallowed by the Bankruptcy Court,

28   shall be distributed on account of Allowed General Unsecured Claims at the time when the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  succeeding Distribution is to be paid to General Unsecured Creditors, or abandoned to the

2  Reorganized Debtor if all Plan Obligations and post Confirmation obligations of the Plan Agent

3  or Trustee have been satisfied in full.

### VIII.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Executory Contracts Assumption/Rejection.**

**Option A:**    The following are the unexpired leases and executory contracts to be

assumed as obligations of the Reorganized Debtor under the Plan:

      i.    All current policies of insurance consisting of title insurance, commercial

general liability, excess / umbrella liability insurance and automobile insurance policies;

and,

      ii.    All existing lease agreements with all tenants of the Crystal Cathedral

Campus, including UCI Medical for lease of a portion of the parking areas located

thereon.

**Option B:**    In connection with the consummation of a sale of the Crystal Cathedral

Campus, the purchaser shall determine within five (5) days of the date of consummation of such

transaction whether it wishes to receive an assignment of the UCI Medical lease for a portion of

the parking areas located upon the Crystal Cathedral Campus.  Based upon this election, the Plan

Agent or the Trustee will seek Court approval of the assumption and assignment of the UCI

Medical Lease in connection with Plan Confirmation, or a rejection of same.  Insurance policies

will be rejected upon disposition of all real and personal property assets subject to same.

The Order of the Court confirming the Plan shall constitute an Order approving the

assumption or rejection of each lease and contract listed above.  If you are a party to a lease or

contract to be assumed and you object to the assumption of your lease or contract, you must file

and serve your objection to the Plan within the deadline for objecting to the confirmation of the

Plan.  If you are a party to a contract or lease to be rejected and you object to the rejection of your

contract or lease, you must file and serve your objection to the Plan within the deadline for

objecting to the confirmation of the Plan.

1    THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

2    ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS 30 DAYS

3    FOLLOWING ENTRY OF ANY ORDER AUTHORIZING THE REJECTION OF THE LEASE

4    OR CONTRACT, INCLUDING THE ORDER CONFIRMING THIS PLAN, IF THE

5    CONTRACT OR LEASE IS REJECTED BY THE TERMS OF THIS PLAN. Any Claim based

6    on the rejection of an executory contract or unexpired lease will be barred if the Proof of Claim is

7    not timely filed, unless the Court later orders otherwise.

8         **B.    Payment of Cure Claims.** The Plan Agent or Trustee shall be responsible for the

9    payment of all Allowed Cure Claims. The Plan Agent or Trustee shall pay all Allowed Cure

10   Claims in full on the Effective Date.

11        **C.    Retention of Property Rights.** To the extent that an agreement that provides the

12   Debtor with property rights does not constitute an executory contract or unexpired lease, or the

13   Debtor has obtained property rights under the executed portion of an executory contract or

14   unexpired lease, rejection of such agreement shall not constitute an abandonment by the Debtor or

15   the Estate of any such property rights.

16        **D.    Bar Date for Rejection Damages.** Any Claim arising out of the rejection of an

17   executory contract or unexpired lease shall be forever barred and shall not be enforceable against

18   the Debtor, the Reorganized Debtor, its affiliates, its successors, Estate, or its properties, and shall

19   not be entitled to any Distribution under the Plan, unless a Proof of Claim for such Rejection

20   Claim is filed and served on the Debtor and the Committee within thirty (30) days after the later

21   of (i) the date of entry of the order of the Bankruptcy Court approving the rejection of the

22   executory contract or unexpired lease, or (ii) the Confirmation Date.

23        **E.    Claims Schedule.** The Cure Claims Schedule shall be filed with the Bankruptcy

24   Court, and served on the Debtor and the non-debtor parties to such executory contracts and

25   unexpired leases, on or before the twenty-fourth (24th) day prior to the Confirmation Hearing.

26   Any objection to the amount of any Cure Claim set forth in the Cure Claims Schedule shall be

27   filed and served upon counsel for the Debtor and the Committee on or before the fourteenth

28   (14th) day prior to the Confirmation Hearing. In the event that any such objection to the amount

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1   stated for a Cure Claim in the Cure Claims Schedule is not filed and served as set forth herein, the

2   amount of the Creditor's Cure Claim shall be deemed forever to be the amount set forth in the

3   Cure Claims Schedule, and any Cure Claim in excess of the amount set forth in the Cure Claims

4   Schedule shall be waived and shall be forever barred in the Case, without further notice. If the

5   Debtor or Committee cannot resolve any such objections with the Creditor, the Debtor or

6   Committee may either (i) elect to reject the executory contract or unexpired lease at the

7   Confirmation Hearing, or (ii) have the Bankruptcy Court determine the merits of the objection on

8   or after the Confirmation Hearing (without delaying the confirmation of the Plan). Any amount

9   of Cure Claim payable upon the assumption of an executory contract or unexpired lease shall be

10  due and payable on or before the fifteenth (15th) day after the entry of a Final Order fixing the

11  amount of the Cure Claim and then only in the amount fixed by such Final Order.

## IX.

## EFFECT OF CONFIRMATION OF PLAN

Confirmation of the Committee's Plan will have, in part, the following effects.

**A.    Discharge.** The Debtor's entitlement to a discharge, to the extent specified in 11

U.S.C. § 1141 is dependent upon whether Option A or Option B is elected by the Debtor. In the

event Option A is elected, this Plan provides that upon the Effective Date, Debtor shall be

discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent

specified in 11 U.S.C.§1141. However, any liability imposed by the Plan will not be discharged.

In the event Option B is elected, this Plan provides that the Debtor will be discharged only upon

consummation of this Plan and satisfaction of all Plan Obligations in full.

**B.    Injunction.** Except as otherwise expressly provided in the Plan, or in the

Confirmation Order, on and after the Effective Date, all Claims will be discharged pursuant to the

terms of the Plan (including but not limited to states and other governmental units, and any state

official, employee, or other entity acting in an individual or official capacity on behalf of any

state or other governmental units) and will be permanently enjoined from the following: (i) taking

any of the following actions on account of any such discharged Claim or Interest: (a)

commencing or continuing in any manner any action or other proceeding against the Debtor, the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  Reorganized Debtor, its successors, or its property; (b) enforcing, attaching, executing, collecting,

2  or recovering in any manner any judgment, award, decree, or order against the Debtor, the

3  Reorganized Debtor, its successors, or its property; (c) creating, perfecting, or enforcing any Lien

4  against the Debtor, the Reorganized Debtor, its successors, or its property; (d) asserting any set

5  off, right of subrogation, or recoupment of any kind against any obligation due to the Debtor, the

6  Reorganized Debtor, its successors, or its property; and (e) commencing or continuing any action,

7  in any manner, in any place that does not comply with or is inconsistent with the provisions of the

8  Plan; and (ii) taking any action on account of any claims or rights of action that are revested in, or

9  transferred to, the Reorganized Debtor as of the Effective Date or under the Plan (to the extent

10  that a Debtor's Estate first held such claim or right of action or held the right to assert such claim

11  or right of action after the Petition Date), including, without limitation, commencing or

12  continuing in any manner any Avoidance Action (i.e., no party may pursue any avoidance claims,

13  except for the Plan Agent, the Trustee or the Post Confirmation Committee, or as otherwise

14  provided by the Plan).  Any person or entity injured by any willful violation of such injunction

15  will recover its actual damages, including costs and attorneys' fees, and, in appropriate

16  circumstances, may recover punitive damages from the willful violator.

17  **C.    Tax Consequences of the Plan.**

18  The implementation of this Plan may have federal, state and local tax consequences to the

19  Debtor's Creditors.  No tax opinion has been sought or will be obtained with respect to any

20  consequences of this Plan.

21  The discussion below summarizes only certain of the federal income tax consequences

22  associated with this Plan's implementation.  This discussion does not attempt to comment on all

23  aspects of the federal income tax consequences associated with this Plan, nor does it attempt to

24  consider various facts or limitations applicable to any particular Creditor which may modify or

25  alter the consequences described herein.  A Creditor may find that the tax consequences of the

26  Plan to such Creditor differ materially from the tax consequences discussed below because of

27  such Creditor's facts and circumstances.  This discussion does not address state, local or foreign

28  tax consequences or the consequences of any federal tax other than the federal income tax.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    This discussion is based upon the provisions of the Internal Revenue Code of 1986, as

2 amended (the "Internal Revenue Code"), the regulations promulgated thereunder, and existing

3 judicial decisions and administrative rulings.  In light of the rapidly-changing nature of tax law,

4 no assurance can be given that legislative, judicial or administrative changes will not be

5 forthcoming that would affect the accuracy of the discussion below.  Any such changes could be

6 material and could be retroactive with respect to the transactions entered into or completed prior

7 to the enactment or promulgation thereof.  The tax consequences of certain aspects of the Plan are

8 uncertain due to the lack of applicable legal authority and may be subject to judicial or

9 administrative interpretations that differ from the discussion below.

10    CREDITORS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS

11 REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE

12 TRANSACTIONS CONTEMPLATED BY THIS PLAN, INCLUDING FEDERAL, STATE,

13 LOCAL AND FOREIGN TAX CONSEQUENCES.

14    **D.**  **Revesting of Property in the Debtor.**

15    The confirmation of the Plan does not revest any of the property of the Estate in the

16 Reorganized Debtor, except for any property abandoned to the Reorganized Debtor by the terms

17 of the Plan or the subsequent request of the Plan Agent or Trustee, and approval of the

18 Bankruptcy Court.

19           **X.**

20     **LIMITATION OF LIABILITY AND RELEASES**

21    **A.**  **No Liability for Solicitation or Participation.**  As specified in Section 1125(e) of

22 the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan or that participate

23 in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith

24 and in compliance with the applicable provisions of the Bankruptcy Code, will not be liable, on

25 account of such solicitation or participation, for violation of any applicable law, rule, or

26 regulation governing the solicitation of acceptances or rejections of the Plan or the offer,

27 issuance, sale, or purchase of securities.

28

Ringstad & Sanders
L.L.P.
2020 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    **B.    Limitation of Liability.** Effective as of the Effective Date, neither the

2    Committee, nor any of its respective members, officers, directors, employees and other agents,

3    advisors and Professionals will have or incur any liability to any Creditor or to any other person

4    for any act or omission in connection with or arising out of the negotiation, preparation and

5    pursuit of confirmation of the Plan, the approval of this Disclosure Statement, the consummation

6    of the Plan, the administration of the Plan, the Case or the property to be distributed under the

7    Plan, to the fullest extent permitted by applicable statutory and case law.

8                                              **XI.**

9              **CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**

10    **A.    Condition Precedent to Plan Effectiveness.** As a condition precedent to the

11    effectiveness of the Plan and the occurrence of the Effective Date, the Confirmation Order must

12    become a Final Order.  The Committee reserves the right to object to the form of the

13    Confirmation Order.  In the event that an appeal, petition for certiorari or motion for reargument

14    or rehearing or comparable post-confirmation relief is filed with respect to the Confirmation

15    Order, and no stay of the effectiveness of the Confirmation Order is obtained, the Committee may

16    elect, in the exercise of its sole and absolute discretion, to proceed with the Effective Date of the

17    Plan and to commence to consummate the Plan, by filing and serving upon counsel for the

18    Secured Creditors, counsel for the Debtor, the United States Trustee and the party seeking such

19    post-confirmation relief, notice of such election.

20    **B.    Waiver of Conditions.** Conditions precedent to Plan Effectiveness may be

21    waived by the Committee without notice, leave or order of the Bankruptcy Court, and without any

22    formal action other than proceeding to obtain the Confirmation Order and to consummate the

23    Plan.

24                                              **XII.**

25                     **RETENTION OF JURISDICTION**

26              Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

27    Date, the Bankruptcy Court will retain jurisdiction over the Case and any of the proceedings

28    arising from, or relating to, the Case pursuant to Section 1142 of the Bankruptcy Code and 28

Ringstad & Sanders
LLP
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

1    U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law,

2    including, without limitation, such jurisdiction as is necessary to ensure that the purposes and

3    intent of the Plan are carried out.  Without limiting the generality of the foregoing, the

4    Bankruptcy Court will retain jurisdiction for the following purposes:

5          A.    To hear and determine any and all objections to the allowance, or requests for

6    estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7          B.    To consider and act on the compromise and settlement of any Claim against, or

8    cause of action on behalf of, any Debtor or any Estate, including, without limitation, any

9    Avoidance Action;

10          C.    To hear and determine any motions pending on the Effective Date to assume,

11    assume and assign or reject any executory contract or unexpired lease and to determine the

12    allowance of any Claim resulting therefrom;

13          D.    To enter such orders as may be necessary or appropriate in connection with the

14    recovery or liquidation of the Debtor's assets, wherever located;

15          E.    To hear and determine any and all applications for allowance of compensation and

16    reimbursement of expenses of Professionals;

17          F.    To hear and determine any and all controversies, suits and disputes arising under

18    or in connection with the interpretation, implementation or enforcement of the Plan and any of the

19    documents intended to implement the provisions of the Plan or any other matters to be resolved

20    by the Bankruptcy Court under the terms of the Plan;

21          G.    To hear and determine any motions or contested matters involving Taxes, tax

22    refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor,

23    including, without limitation, matters involving federal, state and local Taxes in accordance with

24    Sections 346, 505 and 1146 of the Bankruptcy Code;

25          H.    To hear and determine any and all applications, adversary proceedings and

26    contested matters pending on the Effective Date or that may be commenced after the Effective

27    Date as provided in the Plan;

28          I.    To effectuate Distributions under, and performance of, the provisions of the Plan;

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1       J.     To hear and determine any motion to modify any provision of the Plan after

2  confirmation of the Plan, and, if in the best interests of the Debtor and Creditors, modification of

3  the Plan even after the Plan has been substantially consummated;

4       K.     To correct any defect, cure any omission or reconcile any inconsistency in the

5  Plan, the exhibits to the Plan or this Disclosure Statement and any documents executed in

6  connection with the Plan, or any order of the Bankruptcy Court, including the Confirmation

7  Order, as may be necessary to carry out the purposes and intent of the Plan;

8       L.     To determine such other matters as may be provided for in the Confirmation Order

9  or as may from time to time be authorized under the provisions of the Bankruptcy Code or any

10  other applicable law;

11       M.     To enforce all orders, judgments, injunctions and exculpations issued or entered in

12  connection with the Case or the Plan;

13       N.     To enter such orders as may be necessary or appropriate in aid of confirmation and

14  to facilitate implementation of the Plan, including, without limitation, any orders as may be

15  appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified

16  or vacated;

17       O.     To determine any other matter not inconsistent with the Bankruptcy Code; and,

18       P.     To issue a final decree closing the Case.

19

## XIII.

20

## MODIFICATION OF THE PLAN; CRAMDOWN

21       **A.**    **Modification of the Plan.**  At any time prior to the confirmation of the Plan, the

22  Committee may supplement, amend or modify the Plan, provided that after the voting with

23  respect to the Plan, the Committee will not make any modifications to the Plan which affect

24  materially and adversely the interests of General Unsecured Creditors under the Plan. The

25  Committee will provide to the Debtor notice of any such modification of the Plan, and an

26  opportunity to be heard thereon. After confirmation of the Plan, the Committee, the Plan Agent

27  or the Trustee may (i) apply to the Bankruptcy Court to modify the Plan, notwithstanding any

28  substantial consummation of the Plan if in the best interests of the Debtor and Creditors; and (ii)

Ringstad & Sanders
—— L.L.P. ——
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1   apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile

2   inconsistencies in the Plan.

3   **B.  Nonconsensual Confirmation.**  In the event that any impaired Class of Claims

4   should fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, the

5   Committee (i) may request that the Bankruptcy Court confirm the Plan in accordance with

6   Section 1129(b) of the Bankruptcy Code, and (ii) may modify the Plan in accordance with

7   Section 1127(a) of the Bankruptcy Code and Section 15.1 of the Plan.

8   **XIV.**

9   **MISCELLANEOUS**

10   **A.  Payment of Statutory Fees.**  All quarterly fees due and payable to the United

11   States Trustee pursuant to 28 U.S.C. 1930(a)(6) will be paid in full on or before the Effective

12   Date, or, to the extent such quarterly fees are disputed, an adequate reserve will be established

13   and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy

14   Code.  The Reorganized Debtor will remain responsible for the submission of quarterly reports to

15   the U.S. Trustee in connection with the timely payment of its quarterly fees due and payable after

16   the Effective Date, until the Reorganized Debtor's Case is closed, to the extent required by

17   28 U.S.C. 1930(a)(6), based upon the post-Confirmation operations of the Reorganization Debtor.

18   The Plan Agent or Trustee will be responsible for the submission of quarterly reports to the U.S.

19   Trustee in connection with the timely payment of quarterly fees due and payable after the

20   Effective Date based upon disbursements made by the Plan Agent or Trustee to satisfy the Plan

21   Obligations.

22   **B.  Payment Dates.**  Whenever any Distribution to be made under the Plan becomes

23   due on a day other than a Business Day, such Distribution instead will be made, without interest,

24   on the immediately following Business Day.

25   **C.  Other Documents and Actions.**  The Plan Agent or the Trustee may execute such

26   other documents and take such other actions as may be necessary or appropriate to effectuate the

27   transactions contemplated under the Plan.

28

*Ringstad & Sanders*
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    **D.    Notices.** Except as expressly set forth herein to the contrary, all notices and

2    requests in connection with the Plan must be in writing and must be hand delivered or sent by

3    telefacsimile, with a copy sent by first-class mail, addressed to:

4    **TO THE DEBTOR:**

5    James Penner
     Vice President

6    13280 Chapman Avenue
     Garden Grove, CA 92840

7    Telephone: (714) 971-4000
     Facsimile: (714) 971-4252

8

9    **WITH A COPY TO:**
     Marc J. Winthrop, Esq.

10   Winthrop Couchot Professional Corporation
     660 Newport Center Drive, Suite 400

11   Newport Beach, CA 92660
     Telephone: (949) 720-4100

12   Facsimile: (949) 720-4111

13

14   **TO THE COMMITTEE:**
     Nanette D. Sanders, Esq.
     Ringstad & Sanders, LLP

15   2030 Main Street, Suite 1200
     Newport Beach, CA 92614

16   Telephone: (949) 851-7450
     Facsimile: (949) 851-6926

17

18   All notices to any Creditor will be sent to it at its last known address or to the last known

19   address of its attorney of record. Any such person may designate in writing any other address for

20   purposes of this paragraph, which designation will be effective on receipt thereof by the Debtor.

21   **E.    Governing Law.** Unless a rule of law or procedure is supplied by federal law

22   (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California

23   (without reference to its conflict of law rules) will govern the construction and implementation of

24   the Plan and any agreements, documents, and instruments executed in connection with the Plan,

25   unless otherwise specifically provided in such agreements, documents, or instruments.

26   **F.    Binding Effect.** The Plan and all rights, duties and obligations thereunder will be

27   binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, Creditors, the

28   Committee and their respective successors and assigns.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    **G.    Successors and Assigns.** The rights, benefits, and obligations of any entity named

2    or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors,

3    administrators, successors, and assigns of such entity.

4    **H.    No Waiver.** The failure of the Debtor or any other entity to object to any Claim

5    for purposes of voting will not be deemed to be a waiver of the Debtor's or other entities' right to

6    object to or examine such Claim, in whole or in part.

7    **I.    Inconsistencies.** In the event that the terms or provisions of the Plan are

8    inconsistent with the terms and provisions of the exhibits to the Plan, any document executed in

9    connection with the Plan, the Disclosure Statement, or the exhibits to the Disclosure Statement,

10    the terms of the Plan will control.

11    **J.    Exemption from Certain Transfer Taxes and Recording Fees.** Pursuant to

12    Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor or the Plan Agent or

13    Trustee to the Reorganized Debtor or to any other person or entity pursuant to, or implemented

14    by, the Plan will not be subject to any document recording tax, stamp tax, conveyance fee,

15    intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording

16    tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental

17    assessment. The Confirmation Order will direct the appropriate state or local governmental

18    officials or agents to forego the collection of any such tax or governmental assessment and to

19    accept for filing and recordation any of the foregoing instruments or other documents without the

20    payment of any such tax or governmental assessment.

21    **K.    Post-Confirmation Status Report.** Within 180 days following the entry of the

22    Confirmation Order, the Plan Agent or the Trustee will file with the Bankruptcy Court a status

23    report explaining the progress made toward consummation of the Plan. The status report will be

24    served on the United States Trustee, the Reorganized Debtor, the Post Confirmation Committee,

25    and any parties who file a request for special notice of post-confirmation matters. Unless

26    otherwise ordered by the Bankruptcy Court, further status reports will be filed every 180 days and

27    served on the same entities.

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1       **L.**    **Post-Confirmation Conversion/Dismissal.**  A Creditor or other party-in-interest

2 may file a motion to convert or dismiss the Case under Section 1112(b), if there is a default by the

3 Reorganized Debtor in performing the Plan.  The Reorganized Debtor reserves the right to object

4 to any such motion for conversion or dismissal.

5       **M.**    **Changes in Rates Subject to Regulatory Commission Approval.**  The

6 Committee is informed and believes that the Debtor is not subject to governmental regulatory

7 commission approval of its rates.

8       **N.**    **Final Decree.**  Once the Estate has been fully administered as referred to in

9 Bankruptcy Rule 3022, the Plan Agent or Trustee, or the Reorganized Debtor or the Post

10 Confirmation Committee may file a motion with the Court to obtain a final decree to close the

11 Case.

12 Dated:  August 10, 2011             Respectfully Submitted,
                                     RINGSTAD & SANDERS, LLP

13

14                                   By: _____/s/_____

15                                       Nanette D. Sanders
                                  Counsel for Official Committee of Creditors

16                                     Holding Unsecured Claims

17

18 Dated:  August ___, 2011          Official Committee of Creditors Holding Unsecured
                                    Claims

19

20                                   By: _____
                                    Rick Pane, Chair

21

22

23

24

25

26

27

28

**Ringstad & Sanders**
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450